[No. S030815. Dec. 16, 1993.]

ANN M., Plaintiff and Appellant, v.
PACIFIC PLAZA SHOPPING CENTER et al., Defendants and
Respondents.

**COUNSEL**

Milton J. Silverman, Lemish & Lewis and Carl M. Lewis for Plaintiff and Appellant.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Donald A. Vaughn, Mary Elizabeth DeVoy, Marie A. LaSala and Kevin M. Arnold for Defendants and Respondents.

## OPINION

PANELLI, J.—We granted review in this case to determine whether the scope of the duty owed by the owner of a shopping center to maintain common areas within its possession and control in a reasonably safe condition includes providing security guards in those areas. We conclude that, under the facts of this case, the owner did not owe a duty to provide security guards.

## I. BACKGROUND

This case arises out of a civil complaint filed by Ann M. after she was raped at her place of employment. Unless otherwise indicated, the facts as stated herein are not in dispute.[1]

On June 17, 1985, Ann M. was employed by the Original 60 Minute Photo Company, a photo processing service located in a secluded area of the Pacific Plaza Shopping Center (hereafter shopping center). The shopping center, owned and operated by defendants (hereafter sometimes collectively referred to as Pacific Plaza), is a strip mall located on Garnet Avenue in the Pacific Beach area of San Diego. Approximately 25 commercial tenants occupy the shopping center at any one time.

The lease between the photo store and the shopping center granted the owners of the shopping center the exclusive right to control the common areas.[2] Although the lease gave Pacific Plaza the right to police the common areas, the lease did not purport to impose an obligation to police either the

---

[1] In the trial court, defendants made a series of objections to evidence submitted by Ann M. in opposition to the summary judgment motion. The trial court did not rule on the objections. Because counsel failed to obtain rulings, the objections are waived and are not preserved for appeal. (Code Civ. Proc., § 437c, subds. (b) & (c); *Golden West Baseball Co.* v. *Talley* (1991) 232 Cal.App.3d 1294, 1301, fn. 4 [284 Cal.Rptr. 53]; *Ramsey* v. *City of Lake Elsinore* (1990) 220 Cal.App.3d 1530, 1540 [270 Cal.Rptr. 198]; *Haskell* v. *Carli* (1987) 195 Cal.App.3d 124, 129-132 [240 Cal.Rptr. 439].) Although many of the objections appear meritorious, for purposes of this appeal we must view the objectionable evidence as having been admitted in evidence and therefore as part of the record.

[2] Section 9.01 of the lease provides: "All . . . areas and improvements provided by Owner for the general use, in common, of tenants, their officers, agents, employees and customers, shall at all times be subject to the exclusive control and management of Owner. . . . Owner shall have the right to construct, maintain and operate lighting facilities on all said areas and improvements; to police the same; . . . and to do and perform such other acts in and to said areas and improvements as, in the use of good business judgment, the Owner shall determine to be advisable with a view to the improvement of the convenience and use thereof by Tenants, their officers, agents, employees and customers. Owner will operate and maintain the common facilities referred to above in such manner as Owner, in its sole discretion, shall determine from time to time. Without limiting the scope of such discretion, Owner shall have

common areas or those areas under the exclusive control and management of the tenants. In fact, Pacific Plaza hired no security guards.

At approximately 8 a.m. on June 17, Ann M. opened the photo store for business. She was the only employee on duty. The door was closed but unlocked. The store was equipped with a "drop gate" that was designed to prevent customer access behind the counter but it had been broken for some period of time. Shortly after Ann M. opened the store, a man she had never seen before walked in "just like a customer." Ann M. greeted the man, told him that she would assist him shortly, and turned her back to the counter. The man, who was armed with a knife, went behind the counter, raped Ann M., robbed the store, and fled. The rapist was not apprehended.

In 1984 and 1985 violent crimes occurred in the census tract in which the shopping center is located. While the record includes some evidence of criminal activity on the shopping center's premises prior to Ann M.'s rape—bank robberies, purse snatchings, and a man pulling down women's pants[3]—there is no evidence that Pacific Plaza had knowledge of these alleged criminal acts. In fact, Pacific Plaza offers uncontroverted evidence that it "is the standard practice of [Pacific Plaza] to note or record instances of violent crime" and that Pacific Plaza's records contain no reference to violent criminal acts in the shopping center prior to Ann M.'s rape.

Ann M. presented evidence that the employees and tenants were concerned about their safety prior to her rape. These concerns centered around the presence of persons described as transients, who loitered in the common areas. One of the employees of the photo store called the police on two different occasions prior to the incident involved herein to complain that she felt threatened by persons loitering outside her employer's store. The photo store ultimately granted this employee permission to bring her dog to work for protection. This employee worked a late night shift, while Ann M.

the full right and authority to employ all personnel and to make all rules and regulations pertaining to and necessary for the proper operation and maintenance of the common areas and facilities."

[3]In her deposition testimony, Ann M. states: "[T]here was a [transient] running around the mall in the apartment building that was pulling down women's pants. Come up behind them and pull down their pants. [¶] And I met a woman, a shopper. Some kids went by on their bikes and hit her, knocked her over, and took off with her purse. The bank had been robbed a couple of times. I don't know if anyone was hurt in that. There are a couple of instances of kids hitting on some of the people in the mall. Coming up and hitting them and robbing, taking from them, and several break-ins." Although the deposition testimony is less than clear, the record supports an inference that there was at least one instance of the pulling down of a woman's pants in the mall area and several such instances in a neighboring apartment building. An unidentified security guard at the neighboring apartments was the source of Ann M.'s information on this subject.

worked during the day. During periodic meetings of the merchants' association, an organization to which all tenants belonged, the tenants voiced complaints about a lack of security in the shopping center and the presence of transients. There is no evidence to indicate, however, that Ann M.'s rapist was one of the loitering transients or that the presence of the transients contributed in any way to Ann M.'s attack.

According to Ann M.'s deposition testimony, the merchants' association invited a security company to address the tenants' concerns at one of its meetings. During that meeting, the security company informed the tenants of different security options and recommended that regular walking patrols be instituted. Ann M. stated in her deposition that she was told that the merchants' association decided not to hire the security patrols, because the cost would be prohibitive. Ann M. further testified that she was told at these meetings that the merchants' association requested that the shopping center provide such patrols. No such patrols were provided. According to the lease, if the shopping center had provided the requested patrols, the tenants would have borne the cost in the form of additional rent. Ultimately, the merchants' association hired a security company to drive by the area three or four times a day instead of arranging for foot patrols. Ann M. was raped sometime thereafter.

After the rape, Ann M. filed a civil complaint for damages in the superior court, alleging causes of action for negligence against Amapho Corp. (the owner and operator of the photo store), Glen Hutchinson (the president of Amapho Corp.), the shopping center, and La Jolla Development Co. (the corporation employed to manage the shopping center at the time of the rape).[4] Ann M. alleged that the defendants were negligent in failing to provide adequate security to protect her from an unreasonable risk of harm. This risk specifically was alleged to be the presence of transients and the potential for violent confrontation between transients and employees of the shopping center.

Pacific Plaza filed a motion for summary judgment or summary adjudication of issues, claiming that it owed no legal duty to Ann M., primarily

---

[4]Ann M. also filed a workers' compensation claim against Amapho Corp. and Hutchinson for which she was awarded benefits. Ann M. subsequently dismissed Hutchinson and Amapho Corp. with prejudice pursuant to Labor Code section 3602 (workers' compensation as exclusive remedy).

Pacific Plaza filed a cross-complaint for indemnity against Amapho Corp. and Hutchinson. After the latter two parties filed a motion for summary judgment against Pacific Plaza, Pacific Plaza dismissed them without prejudice, and the court entered judgment in their favor.

Because of the procedural posture of this case, the issue of any possible liability of the tenant/employer to either Ann M. or Pacific Plaza is not before this court.

because Ann M.'s attack was unforeseeable. Ann M. countered that a duty was owed: the attack was foreseeable because Pacific Plaza permitted transients to congregate in the common areas of the shopping center. Ann M. contended that "[s]ecurity patrols to roust the center's transient population would have provided the [necessary] 'first line of defense'" that Pacific Plaza allegedly had a duty to provide. The trial court granted the motion, finding that Pacific Plaza owed Ann M. no duty of care, and entered judgment in favor of Pacific Plaza.

Ann M. appealed. Following rehearing, the Court of Appeal affirmed the judgment of the trial court, but on different grounds. The Court of Appeal held that Pacific Plaza owed a duty to tenants and their employees to maintain the common areas and leased premises in a reasonably safe condition, including the duty to take reasonable precautions against foreseeable criminal activity by third persons; however, based on the evidence presented, the Court of Appeal held that no reasonable jury could have concluded that Pacific Plaza acted unreasonably in failing to provide the security patrols that Ann M. claims were necessary.

We granted Ann M.'s petition for review.

## II.  Discussion

### A.  Standard of Review

Although Ann M.'s complaint is phrased in broader terms, Ann M. concedes that the gravamen of her complaint is that Pacific Plaza's failure to provide security patrols in the common areas constituted negligence. We therefore confine our review to this issue. (Cf. *Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310] ["purpose of summary procedure is to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues"]; *FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 381-382 [282 Cal.Rptr. 508] [pleadings serve as the outer measure of materiality in a summary judgment proceeding].)

An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770]; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60.) On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the

defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

For the reasons discussed below, we conclude that, under the facts of this case, the scope of any duty owed by Pacific Plaza to Ann M. did not include providing security guards in the common areas. Accordingly, we do not address whether Pacific Plaza's failure to provide security guards was a proximate cause of Ann M.'s injuries (See *Nola M.* v. *University of Southern California* (1993) 16 Cal.App.4th 421 [20 Cal.Rptr.2d 97] [hereafter *Nola M.*].)

## B.  *Duty*

The existence of a duty is a question of law for the court. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 124 [211 Cal.Rptr. 356, 695 P.2d 653, A.L.R.4th 1747] [hereafter *Isaacs*]; *Southland Corp.* v. *Superior Court* (1988) 203 Cal.App.3d 656, 663 [250 Cal.Rptr. 57].) Accordingly, we determine de novo the existence and scope of the duty owed by Pacific Plaza to Ann M.

It is now well established that California law requires landowners to maintain land in their possession and control in a reasonably safe condition. (Civ. Code, § 1714; *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) In the case of a landlord, this general duty of maintenance, which is owed to tenants and patrons, has been held to include the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures. (*Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 499-501 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447] [hereafter *Frances T.*]; *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 802-803 [142 Cal.Rptr. 487] [hereafter *O'Hara*]; *Isaacs, supra,* 38 Cal.3d at pp. 123-124.)

Pacific Plaza argues that its relationship with Ann M. is insufficient to support the extension to Ann M. of the duty that it owes to its patrons and tenants to take reasonable steps to secure the common areas of its land. Ann M. counters that she is, in effect, Pacific Plaza's invitee and that this status creates a "special relationship" sufficient to support the imposition on Pacific Plaza of a duty to her.

In this state, duties are no longer imposed on an occupier of land solely on the basis of rigid classifications of trespasser, licensee, and invitee.

(*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 808, fn. 5 [205 Cal.Rptr. 842, 685 P.2d 1193]; *Rowland* v. *Christian, supra,* 69 Cal.2d at p. 119.) The purpose of plaintiff's presence on the land is not determinative. We have recognized, however, that this purpose may have some bearing upon the liability issue. (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 119.) This purpose therefore must be considered along with other factors ·weighing for and against the imposition of a duty on the landowner.[5]

■ We conclude that it is appropriate in this case to apply the rules specifying the duty of a landowner to its tenants and patrons. Ann M.'s reason for being upon Pacific Plaza's land at the time of her attack fully supports this conclusion. As stated above, it is established that a landlord owes a duty of care to its tenants to take reasonable steps to secure the common areas under its control. In this case, Ann M. admittedly was not Pacific Plaza's tenant; her employer was. Nevertheless, in the commercial context where the tenant generally is not a natural person and must, therefore, act through its employees, it cannot be seriously asserted that a tort duty that a landlord owes to protect the personal safety of its tenant should not extend to its tenant's employees. (Cf. *DeGraf* v. *Anglo California Nat. Bank* (1939) 14 Cal.2d 87, 93 [92 P.2d 899] ["plaintiff, as manager of the business of a tenant of the building, stood in a position equal to that of an actual tenant thereof"].) Therefore, the issue of the existence and scope of Pacific Plaza's duty to Ann M. is not resolved by the fact that Ann M.'s employer, rather than Ann M. herself, was Pacific Plaza's tenant.

■ Pacific Plaza next contends that it owed no duty to Ann M. in this case because the crime occurred on property not within its possession and control. While it is true that Ann M. was raped within the tenant's premises, Ann M. alleges that it was Pacific Plaza's failure to adequately maintain the common areas that caused her injury. As a result, she contends that the location of the crime does not necessarily determine the landowner's liability for injuries resulting from criminal acts. (*Frances T., supra,* 42 Cal.3d at p. 503; *O'Hara, supra,* 75 Cal.App.3d at p. 803.)

In *O'Hara, supra,* 75 Cal.App.3d 798, a tenant sued her landlord, alleging that it was liable for injuries resulting from her rape inside her apartment.

---

[5]Some factors that courts consider in determining the existence and scope of a duty in a particular case are: "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 113.)

Knowing of several previous rapes of tenants and of conditions indicating a likelihood that the rapist would repeat his attacks, the landlord induced the plaintiff to rent an apartment in the complex without disclosing any of the above information, and by falsely assuring her that the premises were safe and patrolled at all times by professional guards. (*Id.* at p. 802.) The landlord also failed to share with the plaintiff knowledge of the suspect's mode of operation and composite drawings of the suspect. (*Ibid.*) The Court of Appeal held that the landlord had a duty to take reasonable precautions to safeguard the common areas against the types of crimes of which it had notice and which were likely to recur if the common areas were not secure. (*Id.* at pp. 803-804.) Because the landlord's failure to take "reasonable precautions to safeguard the common areas under [its] control could have contributed substantially, as alleged, to [the tenant's] injuries" (*id.* at p. 803), the Court of Appeal reversed the judgment of the trial court with directions to overrule the general demurrer (*id.* at p. 806).

In *Frances T., supra,* 42 Cal.3d 490, this court adopted the reasoning of the *O'Hara* court and extended it to the context of residential condominiums. We reasoned that a condominium association functions as a landlord in maintaining the common areas of a large condominium complex and, thus, has a duty to exercise care for the residents' safety in those areas under its control. (*Id.* at p. 499.) In *Frances T.,* the trial court had sustained the condominium association's demurrer to a unit owner's allegations that it had negligently failed to install adequate lighting in the common areas and was therefore liable for injuries she sustained from a rape that occurred inside her unit. (*Id.* at pp. 495, 498.) We reversed. Although the rape occurred within the unit and not in a common area, we held that the association owed a duty to the plaintiff on the theory that an exterior condition over which the association had control contributed to the rape. (*Id.* at pp. 498-503.)

Since the existence of a duty on the part of Pacific Plaza to Ann M. is not precluded in this case either by the lack of a direct landlord-tenant relationship or by the lack of control over the premises where the crime occurred, we turn to the heart of the case: whether Pacific Plaza had reasonable cause to anticipate that criminal conduct such as rape would occur in the shopping center premises unless it provided security patrols in the common areas. For, as frequently recognized, a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated. (E.g., *Frances T., supra,* 42 Cal.3d at p. 501; *Isaacs, supra,* 38 Cal.3d at pp. 123-124; *Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 807.)

In this, as in other areas of tort law, foreseeability is a crucial factor in determining the existence of duty. (*Isaacs, supra,* 38 Cal.3d at p. 123; *Lopez*

v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 506 [238 Cal.Rptr. 436].) Our most comprehensive analysis to date of the foreseeability required to establish the existence of a business landowner's duty to take reasonable steps to protect its tenants and patrons from third party crime is found in *Isaacs, supra*, 38 Cal.3d 112.

In *Isaacs*, a doctor affiliated with a private hospital was shot while in one of the hospital's parking lots. The doctor sued the hospital for failure to take reasonable security measures. Although the plaintiff presented evidence of several prior threatened assaults at the nearby hospital emergency room, he presented no evidence of prior assaults in the parking lot where he was shot. The trial court granted the defendant's motion for nonsuit because the plaintiff failed to show that prior similar incidents had occurred on the premises. We granted the petition for review to decide whether the plaintiff might "establish foreseeability other than by evidence of prior similar incidents on [the] premises." (*Isaacs, supra*, 38 Cal.3d at p. 120.)

We held that foreseeability, for tort liability purposes, could be established despite the absence of prior similar incidents on the premises. We explained that "foreseeability is determined in light of all the circumstances and not by a rigid application of a mechanical 'prior similars' rule." (*Isaacs, supra*, 38 Cal.3d at p. 126.) We also explained that prior similar incidents are "helpful to determine foreseeability but they are not necessary." (*Id.* at p. 127.) We further explained that foreseeability should be assessed in light of the "totality of the circumstances," including such factors as the nature, condition and location of the premises. (*Id.* at pp. 127-129.) We concluded that the totality of the circumstances in *Isaacs* strongly suggested that the foreseeability of an assault in the parking lot should have been presented to the jury. (*Id.* at p. 130.)[6]

Since *Isaacs* was decided, lower court opinions have questioned the wisdom of our apparent abandonment of the "prior similar incidents" rule. (See *Nola M., supra*, 16 Cal.App.4th at pp. 438-439 ["If there is a flaw in our

---

[6]We considered the following facts in determining that the trial court erred in concluding, as a matter of law, that the assault on the doctor was not foreseeable: the hospital was located in a high-crime area; there had been several threatened assaults in the emergency room area directly across from the parking lot where the assault occurred; there had been incidents of theft and harassment in the area; the emergency room facilities and surrounding areas were inherently dangerous; parking lots, by their very nature, "create an 'especial temptation and opportunity for criminal misconduct'" (38 Cal.3d at p. 130, citing Prosser, Torts (4th ed. 1971) § 33, p. 174; *Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 628 [193 Cal.Rptr. 600]); two of the lights on the building adjacent to the parking lot were not operative during the evening of the assault; the parking lot had poor lighting; the parking lot was devoid of security patrols at the time of the incident; another parking lot at the hospital was monitored by a security guard and television cameras. (*Isaacs, supra*, 38 Cal.3d at p. 130.)

analysis [finding the landowner not liable due to lack of causation between alleged security deficiencies and injury], we suggest it may be time for the Supreme Court to reexamine the concept of duty it articulated in [*Isaacs*] in the context of a society which appears unable to effectively stem the tide of violent crime."]; *Onciano* v. *Golden Palace Restaurant, Inc.* (1990) 219 Cal.App.3d 385, 396 [268 Cal.Rptr. 96] [conc. & dis. opn. of Woods (Fred), J., following *Isaacs*, but observing that its holding leads to inequity].) In addition to judicial criticism, at least one commentator has noted that California is the *only* jurisdiction to adopt a "totality of the circumstances" rule in the business landowner context. (Kaufman, *When Crime Pays: Business Landlords' Duty to Protect Customers from Criminal Acts Committed on the Premises* (1990) 31 S. Tex. L.Rev. 89, 97 [hereafter Kaufman, *When Crime Pays*].)

Unfortunately, random, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable. Upon further reflection and in light of the increase in violent crime, refinement of the rule enunciated in *Isaacs*, *supra*, 38 Cal.3d 112, is required. We are not reluctant to revisit the rule announced in *Isaacs* because it was unnecessary for this court to consider the viability of the "prior similar incidents" rule in order to decide the *Isaacs* case: the record contained evidence of prior, violent, third party attacks on persons on the hospital's premises in close proximity to where the attack at issue in that case occurred. (*Isaacs*, *supra*, 38 Cal.3d at p. 121.)

Moreover, broad language used in *Isaacs* has tended to confuse duty analysis generally in that the opinion can be read to hold that foreseeability in the context of determining duty is normally a question of fact reserved for the jury. (*Isaacs*, *supra*, 38 Cal.3d at pp. 126, 127, 130.) Any such reading of *Isaacs* is in error. ■ Foreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court. (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624]; *Lopez* v. *McDonald's Corp.*, *supra*, 193 Cal.App.3d at p. 507, fn. 6.)

Turning to the question of the scope of a landlord's duty to provide protection from foreseeable third party crime, we observe that, before and after our decision in *Isaacs*, we have recognized that the scope of the duty is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. (*Isaacs*, *supra*, 38 Cal.3d at p. 125.) " '[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where

there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required.' [Citation.]" (*Ibid.*) Or, as one appellate court has accurately explained, duty in such circumstances is determined by a balancing of "foreseeability" of the criminal acts against the "burdensomeness, vagueness, and efficacy" of the proposed security measures. (*Gomez* v. *Ticor, supra,* 145 Cal.App.3d at p. 631.)

While there may be circumstances where the hiring of security guards will be required to satisfy a landowner's duty of care, such action will rarely, if ever, be found to be a "minimal burden." The monetary costs of security guards is not insignificant. Moreover, the obligation to provide patrols adequate to deter criminal conduct is not well defined. "No one really knows why people commit crime, hence no one really knows what is 'adequate' deterrence in any given situation." (*7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901, 905 [172 Cal.Rptr. 528].) Finally, the social costs of imposing a duty on landowners to hire private police forces are also not insignificant. (See *Nola M., supra,* 16 Cal.App.4th at pp. 437-438.) For these reasons, we conclude that a high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards. We further conclude that the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises.[7] To hold otherwise would be to impose an unfair burden upon landlords and, in effect, would force landlords to become the insurers of public safety, contrary to well-established policy in this state. (See *Riley* v. *Marcus* (1981) 125 Cal.App.3d 103, 109 [177 Cal.Rptr. 827]; *7735 Hollywood Blvd. Venture* v. *Superior Court, supra,* 116 Cal.App.3d at p. 905.)

Turning to the facts of the case before us, we conclude that violent criminal assaults were not sufficiently foreseeable to impose a duty upon Pacific Plaza to provide security guards in the common areas. (Cf. *Ballard* v. *Uribe, supra,* 41 Cal.3d 564, 572-573, fn. 6.) First, Pacific Plaza did not have notice of prior similar incidents occurring on the premises. Ann M. alleges that previous assaults and robberies had occurred in the shopping center, but she offers no evidence that Pacific Plaza had notice of these incidents. While a landowner's duty includes the duty to exercise reasonable care to discover that criminal acts are being or are likely to be committed on its ·land (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p.

---

[7] It is possible that some other circumstances such as immediate proximity to a substantially similar business establishment that has experienced violent crime on its premises could provide the requisite degree of foreseeability. Because Ann M. presented no such evidence, we need not further consider this possibility.

807), Pacific Plaza presented uncontroverted evidence that it had implemented "a standard practice . . . to note or record instances of violent crime" and that Pacific Plaza's records contain no reference to violent criminal acts prior to Ann M.'s rape. Moreover, even assuming that Pacific Plaza had notice of these incidents, Ann M. concedes that they were not similar in nature to the violent assault that she suffered. Similarly, none of the remaining evidence presented by Ann M. is sufficiently compelling to establish the high degree of foreseeability necessary to impose upon Pacific Plaza a duty to provide security guards in the common areas. Neither the evidence regarding the presence of transients nor the evidence of the statistical crime rate of the surrounding area is of a type sufficient to satisfy this burden.[8]

We, therefore, conclude that Pacific Plaza was entitled to summary judgment on the ground that it owed no duty to Ann M. to provide security guards in the common areas.

### III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I dissent.

The "prior similar incidents" test was thoroughly analyzed in *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653, A.L.R.4th 1747], and this court held it to be improper. The opinion by Chief Justice Bird was unanimous, with then-associate Justice Lucas and me concurring completely in the rationale and result.

Now the majority purport to deal with *Isaacs* by "refinement" and a "revisit," while they in effect revive the rejected "prior similar incidents"

---

[8]Ann M. offered no evidence to show that, like a parking garage or an all-night convenience store, a retail store located in a shopping center creates " 'an especial temptation and opportunity for criminal misconduct.' " (*Gomez* v. *Ticor*, *supra*, 145 Cal.App.3d at p. 628 [victim killed returning to car in parking garage]; *Cohen* v. *Southland Corp.* (1984) 157 Cal.App.3d 130, 141 [203 Cal.Rptr. 572] [robbery at all-night convenience store].) Therefore, we need not consider in this case whether some types of commercial property are so inherently dangerous that, even in the absence of prior similar incidents, providing security guards will fall within the scope of a landowner's duty of care.

test. Indeed, they "conclude that the requisite degree of foreseeability rarely, *if ever*, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." (Maj. opn., *ante*, p. 679, italics added.)

The *Isaacs* decision should be controlling in the instant case, the bottom line being that the issue of liability and what the majority gratuitously describe as "an unfair burden upon landlords" are factual matters that should be decided by a jury, not by summary judgment. I quote at length from the *Isaacs* opinion (38 Cal.3d at pp. 125-127):

"This rule [requiring prior similar incidents] is fatally flawed in numerous respects. First, the rule leads to results which are contrary to public policy. The rule has the effect of discouraging landowners from taking adequate measures to protect premises which they know are dangerous. This result contravenes the policy of preventing future harm. Moreover, under the rule, the first victim always loses, while subsequent victims are permitted recovery. Such a result is not only unfair, but is inimical to the important policy of compensating injured parties [citation]. Surely, a landowner should not get one free assault before he can be held liable for criminal acts which occur on his property.

"Second, a rule which limits evidence of foreseeability to prior similar criminal acts leads to arbitrary results and distinctions. [Citation.] Under this rule, there is uncertainty as to how 'similar' the prior incidents must be to satisfy the rule. The rule raises a number of other troubling questions. For example, how close in time do the prior incidents have to be? How near in location must they be? The rule invites different courts to enunciate different standards of foreseeability based on their resolution of these questions.

"Third, the rule erroneously equates foreseeability of a particular act with previous occurrences of similar acts. This court has already rejected that notion. ' "The mere fact that a particular kind of an accident has not happened before does not . . . show that such accident is one which might not reasonably have been anticipated." [Citation.] Thus, the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts.' (*Weirum* v. *RKO General, Inc.* [(1975)] 15 Cal.3d [40,] 47 [123 Cal.Rptr. 468, 539 P.2d 36].)

"Finally, the 'prior similar incidents' rule improperly removes too many cases from the jury's consideration. It is well established that foreseeability is ordinarily a question of fact. (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34

Cal.3d 49, 56 [192 Cal.Rptr. 857, 665 P.2d 947]; *Weirum v. RKO General, Inc., supra,* 15 Cal.3d at p. 46.) 'It may be decided as a question of law only if, "under the undisputed facts there is no room for a reasonable difference of opinion." [Citations.]' (*Bigbee v. Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 56.)

"There is a general reluctance to remove foreseeability questions from the jury. [Citation.] Foreseeability ' "is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct." [Citation.] One may be held accountable for creating even " 'the risk of a slight possibility of injury if a reasonably prudent [person] would not do so.' " ' (*Bigbee v. Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 57.)

"Thus, foreseeability is determined in light of all the circumstances and not by a rigid application of a mechanical 'prior similars' rule. (Cf. *Bigbee v. Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at pp. 57-58.) As this court has held, 'what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence.' (*Ibid.*) Prior similar incidents are helpful to determine foreseeability but they are not necessary. A rule that limits evidence of foreseeability to prior similar incidents deprives the jury of its role in determining that question.

"A number of Courts of Appeal have properly recognized that evidence of prior similar incidents is not the sine qua non of a finding of foreseeability. (*Kwaitkowski v. Superior Trading Co.* (1981) 123 Cal.App.3d 324, 329 . . . ; *Gomez v. Ticor, supra,* 145 Cal.App.3d 622, 630; see also *Cohen v. Southland Corp., supra,* 157 Cal.App.3d 130, 140-142.) These cases express the better view."

The *Isaacs* court concluded (38 Cal.3d at p. 135):

"Foreseeability of harm should ordinarily be determined by a jury. That determination calls for the consideration of what is reasonable in light of all the circumstances. One such circumstance is whether the occurrence of prior similar incidents placed the defendant on notice that its security measures were not adequate to prevent harm to persons who use the defendant's premises. While prior similar incidents are helpful to determine foreseeability, they are not required to establish it. Other circumstances may also place the landowner on notice of a dangerous condition. A rule which limits proof

of foreseeability to evidence of prior similar incidents automatically precludes recovery to first-injured victims. Such a rule is inherently unfair and contrary to public policy."

For the foregoing reasons I must dissent from the majority opinion that in effect resurrects an improper test discarded by this court eight years ago.