Opinion by Judge B. FLETCHER; Dissent by Judge PREGERSON.
OPINION
B. FLETCHER, Circuit Judge:
Marie Toomer and Jaya Marie Little (“Appellants”), the mother and daughter of Roderick Little (“Little”), appeal the district court’s order granting summary judgment to the United States. Appellants brought suit under the Federal Tort Claims Act (“FTCA”), claiming that negligence by the United States caused Little’s death. Little was standing in the parking lot of the Del Taco restaurant located across the street from the 32nd Street Naval Base (“Naval Base”) in San Diego, California, when he was shot and killed by Myron Thomas (“Thomas”). Prior to the shooting, Little and Thomas had been fighting at Club Metro, a bar and dance club located on the Naval Base and operated by the United States. We hold that the United States is not liable for Little’s death. Under California law, the United States’ duty to protect Little from foreseeable criminal conduct extended only to the Naval Base, not to the Del Taco restaurant, which was outside the United States’ ownership and control. We affirm.
BACKGROUND AND PROCEDURAL HISTORY
Club Metro is a bar and dance club located inside the Naval Base. It is operated by the U.S. government. Because *1235 fights at Club Metro are common, customers are required to pass through metal detectors before entering, and Club Metro posts security guards at the entrance and inside the building.
Roderick Little and Myron Thomas were at Club Metro the night of November 18, 2008. Each was with a group of friends. The two parties got into a fight on the dance floor. Security personnel intervened and put an end to the physical violence, although the Thomas group continued to make threatening gestures at Little and his friends. When Little’s group left the club, they were confronted by the Thomas party, and another fight broke out in the parking lot. Club Metro security guards again intervened and instructed both groups to leave the Naval Base. They complied, although Thomas had to be physically restrained and brought back to his car by his friends.
The Naval Base posted two military security officers, Darrell Gordon and Juan Salazar, at the exit from the base. The officers were assigned to direct traffic, which was typically very heavy around the time Club Metro closed at 1:30 a.m. A dark car with shiny rims and military decals drove past the officers, and they heard someone inside the car say, “I’m going to do a 187.” Both officers understood this to be a threat of murder; section 187 of the California Penal Code covers murder. CaLPenal Code § 187. The person in the car was later identified as Thomas. Neither of the officers could see him at the time, and they were not able to take down the car’s license plate number. Officer Gordon intended to report the threat to dispatch, which would have then notified the local police, but he was tied up directing traffic. Later Gordon did go over to the guard booth to use the phone to report the threat. Just as he picked up the receiver, he heard shots ring out.
Meanwhile, Thomas went to the apartment of Sergeant Kayzoski Sanders, his supervisor and friend. Thomas was living with Sanders temporarily. Thomas took Sanders’s AK-47 automatic rifle. Sanders knew that Thomas had the automatic rifle and that Thomas was dangerous. He called Thomas to try and persuade him to return to the apartment. Instead, around 2:30 am, Thomas drove with a friend to the Del Taco restaurant located across the street from the Naval Base, where Club Metro patrons tended to hang out after the club had closed. Little was standing in the parking lot of the restaurant. While his friend was at the wheel, Thomas shot in the direction of Little and his friends. Little was killed, and several others were injured.
Subsequently, Thomas was convicted of second-degree murder.
Marie Toomer, Little’s mother, and Jaya Marie Toomer, Little’s daughter, brought suit against the United States for wrongful death, claiming that Little’s death was the result of negligence by the United States. After discovery was complete, the district court granted summary judgment in favor of the United States, holding that California law did not impose on the United States an affirmative duty to protect Little from violent acts that occurred off the Naval Base. Plaintiffs now appeal.
DISCUSSION
Under the FTCA, the United States can be held liable for Roderick Little’s death if “a private individual under like circumstances” could be held liable for his death under California tort law. 28 U.S.C. § 2674. Appellants argue that the United States should be treated like a private night club operator for FTCA purposes. See United States v. Olson, 546 U.S. 43, 46-47, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005). Based on that assumption, Appel *1236 lants advance two theories of liability. First, the United States owed Little an affirmative duty to protect Little from third-party criminal conduct. Second, the United States voluntarily provided security services at Club Metro and had a duty to exercise reasonable care in performing those services. Appellants argue that the United States failed in both duties.
We agree with the district court that California law does not impose on the United States an affirmative duty to protect Little from criminal activity occurring outside the Naval Base. Even if the United States had such a duty, it was not obligated to protect Little from Thomas’s criminal conduct because the drive-by shooting was not reasonably foreseeable. Furthermore, because the United States did not increase the risk of harm to Little by providing security services at Club Metro, it cannot be held liable on a negligent undertaking theory. We therefore affirm the district court’s order granting summary judgment in favor of the United States.
I. Affirmative Duty to Protect Little from Thomas’s Criminal Activity
The first element of any negligence claim is the existence of a duty. See Vasquez v. Residential Invs., Inc., 118 Cal.App.4th 269, 12 Cal.Rptr.3d 846, 853 (2004). Generally there is no obligation to protect others from the harmful conduct of third parties. However, California law imposes an affirmative duty on business proprietors to protect their customers from foreseeable third-party criminal conduct, an obligation that is derived from the special relationship between a business proprietor and his customers. See Morris v. De La Torre, 36 Cal.4th 260, 30 Cal.Rptr.3d 173, 113 P.3d 1182, 1187-88 (2005).
Appellants argue that the United States, as the owner and operator of Club Metro, owed Roderick Little three specific affirmative duties. First, the United States had a duty to undertake “reasonable and minimally burdensome measures,” such as calling 911, to protect Little from imminent or ongoing criminal activity. See id. at 1188. Second, the United States had a duty to take more burdensome measures, such as hiring security guards, to protect Little from highly foreseeable third-party crime. Ann M. v. Pac. Plaza Shopping Ctr., 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 215 (1993). Third, because the United States was Thomas’s landlord, it could be held “liable for failing to address the presence of a dangerous tenant or other person on or about the property.” Hawkins v. Wilton, 144 Cal.App.4th 936, 51 Cal.Rptr.3d 1, 6 (2006).
All three of these duties are specific instances of a landowner’s “general duty of maintenance, which is owed to tenants and patrons.” Id. (internal quotation marks omitted). The duty of maintenance is limited to the landowner’s property. See Castaneda v. Olsher, 41 Cal.4th 1205, 63 Cal.Rptr.3d 99, 162 P.3d 610, 615 (2007) (“A landlord generally owes a tenant the duty ... to take reasonable measures to secure areas under the landlord’s control against foreseeable criminal acts of third parties.” (emphasis added)); Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1191 (duty to take reasonable and minimally burdensome measures to protect customers from ongoing criminal activity extends “to areas within the proprietor’s control ” (emphasis added)); Hawkins, 51 Cal.Rptr.3d at 6 (“A landlord may also be liable for failing to address the presence of a dangerous tenant or other person on or about the property.” (emphasis added)). While the United States did owe the above three duties to Little when he was at Club Metro, those obligations ended when Little drove off the Naval Base. The United States did not have a duty to protect Little while he was *1237 at the Del Taco restaurant. Where there is no duty, there can be no negligence.
Appellants argue that the United States need only have violated its duty to protect Little while Little was on the Navy Base; the injury resulting from that violation, Little’s death, need not have also occurred on the Navy Base. Appellants are incorrect. There is no California Supreme Court decision squarely on point, but intermediate appellate courts have held that, if a proprietor is to be held liable in tort for the criminal activity of third parties, that criminal activity must have occurred on the proprietor’s property. See Mata v. Mata, 105 Cal.App.4th 1121, 130 Cal.Rptr.2d 141, 146 (2003) (“[A] landowner or possessor generally has no duty to take measures to prevent foreseeable violence occurring off the premises.”); Medina v. Hillshore Partners, 40 Cal.App.4th 477, 46 Cal.Rptr.2d 871, 874 (1995) (“Here the trial court ruled that landowner breached no duty of care because the wrongful death involved an off-site shooting. We agree.”); Martinez v. Pac. Bell, 225 Cal.App.3d 1557, 275 Cal.Rptr. 878, 882-83 (1990) (“Pac Bell did not own, possess, or control, and invited no one onto, the parking lot. It, thus, owed no duty of care to protect appellant at that location.”); Balard v. Bassman Event Sec., Inc., 210 Cal.App.3d 243, 258 Cal.Rptr. 343, 346 (1989) (“[A]ny duty owed by respondent to appellant regarding third-party criminal activity was confined to the premises of Stanley’s Restaurant.”); Southland Corp. v. Superior Court, 203 Cal.App.3d 656, 250 Cal.Rptr. 57, 61-62 (1988); Steinmetz v. Stockton City Chamber of Commerce, 169 Cal.App.3d 1142, 214 Cal.Rptr. 405, 407-09 (1985).[1]
*1238 Even if the United States’ affirmative duty to protect extended beyond the Naval Base, the United States still could not be held liable for Little’s death because his death was not the result of foreseeable criminal activity. See Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1188; Ann M., 25 Cal.Rptr.2d 137, 863 P.2d at 214 (“[F]oreseeability is a crucial factor in determining the existence of duty.”).[2] For example, in Morris, the California Supreme Court held that the foreseeability requirement was satisfied because the attack against the plaintiff “actually occurr[ed] in plain view” of the defendant business owner. 30 Cal.Rptr.3d 173, 113 P.3d at 1189. And in Delgado v. Trax Bar & Grill, the court held that the defendant bar owner should have foreseen that plaintiff was going to get into a fight with another restaurant customer, 30 Cal.Rptr.3d 145, 113 P.3d at 1162, because plaintiffs wife told a security guard at the bar that there was going to be a fight between her husband and the third customer, the guard asked plaintiff to leave the bar in order to separate him from the other customer, and the guard saw the customer follow plaintiff into the parking lot, id. at 1172.
The only indication the United States had that Thomas was going to kill Little was when two security guards at the exit from the Navy Base heard someone in a passing car say, “I’m going to do a 187.” Although the guards understood this statement as a death threat, they did not see who made the threat, know who was the target of the threat, or see the license plate number of the car. Nor did they know whether the threat was real or, instead, empty bravado. Even if the officers had known that the threat was sincere and had known who the intended target was, they could not have known that Thomas was going to go back to Sanders’s apartment, pick up a gun, return more than half an hour later to the Del Taco restaurant several blocks away from the exit at which they were stationed, and shoot Little in cold blood. See, e.g., Wiener v. Southcoast Childcare Ctrs., Inc., 32 Cal.4th 1138, 12 Cal.Rptr.3d 615, 88 P.3d 517, 525 (2004); Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1189; Ann M., 25 Cal.Rptr.2d 137, 863 P.2d at 216. The crime was not foresee *1239 able and, therefore, the United States did not have a duty to protect Little from that crime.
II. Negligent Provision of Security Services
Appellants also argue that the United States, having chosen to provide security services at Club Metro, failed in its duty to exercise due care in providing those services. See Delgado, 30 Cal.Rptr.3d 145, 113 P.3d at 1175. Under the negligent undertaking doctrine, a volunteer may be held liable for trying to protect others only if, in so doing, he increases the risk of harm to third parties. See id.; Paz v. State, 22 Cal.4th 550, 93 Cal.Rptr.2d 703, 994 P.2d 975, 981 (2000). To measure increased risk, we must compare the risk of harm to Little that existed on the night of the shooting with the risk that would have existed had the United States provided no security services at Club Metro, not with the risk that would have existed had the United States provided reasonably competent security services. See Paz, 93 Cal.Rptr.2d 703, 994 P.2d at 981. Because Little would not have been safer had there been no security guards at Club Metro, Appellants’ negligent undertaking claim fails.
III. Landlord Theory of Liability
Finally, Appellants argue that their final claim against the United States, that the United States had a duty as Thomas’s landlord to protect third parties from Thomas once it became aware that Thomas was dangerous, survived summary judgment because the district court did not specifically address this claim in its summary judgment order. Even if this claim had been clearly pled in the Complaint,[3] it would fail on the merits; if the United States had an affirmative duty to protect Little from tenants it knew to be dangerous, that duty extended only to the Naval Base, not to the Del Taco restaurant where Little was killed.
AFFIRMED.

. The dissent relies on the California Supreme Court's decisions in Morris v. De La Torre, 36 Cal.4th 260, 30 Cal.Rptr.3d 173, 113 P.3d 1182, 1184-89, 1194 (2005), and Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 213-14 (1993), for the proposition that a business proprietor has a duty to protect his customers "against foreseeable criminal attacks that become imminent on property within the proprietor’s control, even where the attack culminates on property outside the proprietor’s control.” Neither Morris nor Ann M., however, concerned criminal attacks that occurred outside the defendant’s property, and do not answer the case at bar.
In Morris, the plaintiff was punched and stabbed in the defendant's parking lot, and then stabbed several more times on a nearby sidewalk. 30 Cal.Rptr.3d 173, 113 P.3d at 1186. The California Supreme Court focused exclusively on the initial fistfight and stabbing and emphasized that the defendant was liable for those attacks because the parking lot was "subject to defendant's sole use and control.” Id. at 1191. The court said nothing about the second stabbing, leaving it unclear whether the defendant was liable for the portion of the attack that occurred outside the defendant’s property.
The decision in Ann M. is also silent on the issue of whether a business owner can be held liable for criminal attacks that occur outside his property. In Ann M., the court considered whether the landlord of a shopping center breached its duty to maintain the common areas of the shopping center in a reasonably safe condition because it did not employ security guards to patrol those areas. 25 Cal.Rptr.2d 137, 863 P.2d at 209. The plaintiff was attacked while working in a store in the mall. Id. at 210. The landlord was responsible for the common areas of the mall but not the stores, which it leased to tenants. Id. at 209-10. The court explained that a landlord can be held liable for crimes that occur within a tenant's unit, even though the landlord may not control that unit, so long as the crime was the result of the landlord’s failure to maintain common areas within its control. Id. at 213 (citing Frances T. v. Vill. Green Owners Ass'n, 42 Cal.3d 490, 229 Cal.Rptr. 456, 723 P.2d 573 (1986); O’Hara v. Western Seven Trees Corp., Intercoast Mgmt., 75 Cal.App.3d 798, 142 Cal.Rptr. 487 (1977)). The California Supreme Court focused on the obligation of a landlord to protect tenants who are inside his property, and said nothing about the obligation of a business owner to protect customers who venture off his property.
The California Supreme Court has never squarely addressed whether business owners can be held liable for crimes that do not occur *1238 on their property. Several intermediate appellate courts in California have held that they cannot. See supra at 1236-37. Those decisions are not inconsistent with Ann M. or Morris, and we are bound to follow them. See Ryman v. Sears, Roebuck & Co., 505 F.3d 993, 994 (9th Cir.2007) ("[Wjhen (1) a federal court is required to apply state law, and (2) there is no relevant precedent from the state’s highest court, but (3) there is relevant precedent from the state’s intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it.”).

. To determine the scope of a business owner’s affirmative duty to protect, California courts consider the factors listed in Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 564 (1968):
[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the injury suffered, the moral blame attached to the defendant’s conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.
See also Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1192. While all of these considerations are relevant, foreseeability is both relevant and necessary. See Delgado v. Trax Bar & Grill, 36 Cal.4th 224, 30 Cal.Rptr.3d 145, 113 P.3d 1159, 1166 (2005). Because we conclude that Thomas's drive-by shooting was not foreseeable, we need not address the other Rowland factors.

. The Complaint nowhere mentions that the United States is liable for Thomas’s criminal conduct because it was Thomas’s landlord. The Complaint does not even contain the word "landlord.”