PREGERSON, Circuit Judge,
dissenting:
I respectfully dissent.
1. Consideration of the Rowland factors, including foreseeability, demonstrates that the United States owed Navy Seaman Roderick Little a duty
In this case we must decide whether the United States owed Navy Seaman Roderick Little a duty to take reasonable steps to protect him from Marine Lance Corporal Myron Thomas’s deadly criminal attack. The majority concludes that the United States did not owe Seaman Little a duty because Lance Corporal Thomas’s attack was not foreseeable. I respectfully disagree;
Plaintiffs, Seaman Little’s mother and minor daughter, brought suit against the United States under California negligence law pursuant to the Federal Tort Claims Act. See 28 U.S.C. § 2674 (providing that, subject to certain exceptions, the United States may be sued in the same manner and to the same extent as a private individual under like circumstances); Trenouth v. United States, 764 F.2d 1305, 1307 (9th Cir.1985) (explaining that where a plaintiff brings suit under the Federal Tort Claims Act, courts apply the law of the state in which the alleged tort occurred).
*1240 Under California negligence law, business proprietors (such as owners of bars, restaurants, and shopping centers) may-have a special-relationship-based duty to take reasonable steps to protect their tenants, patrons, or invitees against foreseeable criminal acts of third parties. Morris v. De La Torre, 36 Cal.4th 260, 30 Cal.Rptr.3d 173, 113 P.3d 1182, 1184 (2005); Delgado v. Trax Bar & Grill, 36 Cal.4th 224, 30 Cal.Rptr.3d 145, 113 P.3d 1159, 1165 (2005); Ky. Fried Chicken of Cal. v. Superior Court, 14 Cal.4th 814, 59 Cal.Rptr.2d 756, 927 P.2d 1260, 1263 (1997); Ann M. v. Pacific Plaza Shopping Ctr., 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 212 (1993).
As the California Supreme Court has explained, a proprietor’s duty is determined by considering the factors set forth in Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 564 (1968), in light of the circumstances of the case. See Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1192; Delgado, 30 Cal.Rptr.3d 145, 113 P.3d at 1172; Ky. Fried Chicken, 59 Cal.Rptr.2d 756, 927 P.2d at 1263-1264; Ann M., 25 Cal.Rptr.2d 137, 863 P.2d at 212. The Rowland factors are:
the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the injury suffered, the moral blame attached to the defendant’s conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.
Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1192; Ann M., 25 Cal.Rptr.2d 137, 863 P.2d at 212 n. 5. Foreseeability is the most important of these factors. Delgado, 30 Cal.Rptr.3d 145, 113 P.3d at 1166 n. 15.
Viewing the evidence in the light most favorable to the Plaintiffs, as we must on an appeal from the district court’s grant of summary judgment, and examining the totality of the circumstances in this case, Lance Corporal Thomas’s fatal attack against Seaman Little was foreseeable. See Wiener v. Southcoast Childcare Ctrs., Inc., 32 Cal.4th 1138, 12 Cal.Rptr.3d 615, 88 P.3d 517, 519 (2004) (explaining that on appeal from summary judgment, the evidence is viewed in the light most favorable to the appellant); Ann M., 25 Cal.Rptr.2d 137, 863 P.2d at 214 (explaining that foreseeability is determined by totality of the circumstances).
Club Metro is a bar and dance club located on the 32nd Street Naval Base in San Diego. On November 18, 2003, Lance Corporal Thomas and his friends attended Club Metro on the club’s weekly Hip Hop Night. Seaman Little and his friends attended Club Metro that same night.
Club Metro security personnel, which consisted of active duty U.S. Navy Shore Patrol and civilians, knew that there was a history of violence at Club Metro. In the three years preceding Seaman Little’s death, at least fifty fights had occurred at Club Metro’s weekly Hip Hop Night, approximately thirty of which resulted in arrests.
At about 11:45 p.m. on the night in question, Lance Corporal Thomas and his friends got into a fight on the dance floor with Seaman Little and his friends. Security personnel intervened, but Lance Corporal Thomas, Seaman Little, and their friends continued to exchange hostile words and gestures.
As they were leaving Club Metro at about 1:30 a.m., Lance Corporal Thomas challenged Seaman Little to a fight in the Club Metro parking lot. Club Metro security personnel, believing that the altercation would become violent if they did not *1241 intervene, physically separated the two groups. Even after they were physically separated, however, Lance Corporal Thomas, Seaman Little, and their friends continued to argue. Club Metro security personnel ordered the men to leave the base. At that point, Lance Corporal Thomas’s friends had to physically restrain him to stop him from attacking Seaman Little or Seaman Little’s friends. During this brouhaha, Club Metro security personnel overheard spectators suggest that the men continue their fight off base at the Del Taco, a fast food restaurant located across the street from the North West corner of the Naval Base where people often gathered after leaving Club Metro.
At about 2:00 a.m., two security guards, both Navy Masters-at-Arms (“MA”),[1] saw the car in which Lance Corporal Thomas was a passenger run a stop sign as the car approached the exit that the guards were manning. The guards also overheard Lance Corporal Thomas and his friends arguing with Seaman Little and his friends in a nearby car.
Shortly thereafter, as Lance Corporal Thomas and his friends drove off the Naval Base, the two guards stationed at the exit heard one of the car’s passengers shout, “We’re going to do a 187.” When another passenger told the first speaker, “shh, there goes the military police,” the first speaker, responded, “I don’t give a fuck. We’re still going to do a 187.” The guards testified that when they heard this exchange, they put their hands on their guns and took cover because they understood the “187” statement to be a murder threat. The guards did not, however, stop the car to investigate further, and although they intended to report the murder threat to Naval Base authorities, they failed to do so. Additionally, one of the guards saw the car with the passenger who had just shouted the murder threat drive toward the Del Taco, where it was well known that people often gathered after leaving Club Metro.
After leaving the base, Lance Corporal Thomas went and got an AK-47. He then returned to the Del Taco, where he shot and killed Seaman Little, who was standing in the parking lot with his friends. The exit guards who had heard the murder threat, heard the deadly shots ring out; they were still thinking about reporting the murder threat. Based on all the events that took place on the Naval Base, Lance Corporal Thomas’s fatal attack against Seaman Little was foreseeable.
Other Rowland factors also support the conclusion that the United States owed Seaman Little a duty to take to take reasonable steps to protect him against Lance Corporal Thomas’s foreseeable criminal attack. First, the degree of certainty that the Plaintiffs, Little’s mother and minor daughter, suffered injury is absolute: Seaman Little is dead. Second, a duty in these circumstances promotes the policy of preventing future harm by encouraging proprietors to take minimally burdensome measures, like calling 911, when a volatile situation makes an imminent criminal attack foreseeable. Finally, a duty to take reasonable, minimally burdensome measures, such as calling 911, to prevent a foreseeable criminal attack on a patron is a *1242 minor burden to proprietors. Thus, on balance, the Rowland factors, including foreseeability, support the conclusion that the United States owed Seaman Little a duty to take reasonable, minimally burdensome steps to protect him from Lance Corporal Thomas’s fatal attack.
2. A proprietor’s duty does not turn on where a foreseeable criminal attack ultimately culminates
The majority concludes that even if Lance Corporal Thomas’s fatal criminal attack was foreseeable, the United States did not owe Seaman Little a duty because the attack did not happen at Club Metro but instead happened at the Del Taco, across the street from the Naval Base. I respectfully disagree.
Under California negligence law, business proprietors may owe their tenants, patrons, or invitees a duty to take reasonable, minimally burdensome measures to protect them against foreseeable criminal attacks that become imminent on property within the proprietor’s control, even where the attack culminates on property outside the proprietor’s control. See Morris, 113 P.3d 1182, 1184-89, 1194 (2005); Ann M., 863 P.2d 207, 213-214 (1993).
In Morris, the California Supreme Court found that a restaurant proprietor had a duty to take reasonable and minimally burdensome measures to protect a patron from a criminal attack that culminated on a public sidewalk. Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1186, 1194. In that case, third parties instigated a fight with several restaurant patrons in a parking lot that was under the restaurant’s control. Id. at 1186, 1190. While in the parking lot, one of the third parties, in full view of the restaurant employees, stabbed one of the patrons. Id. at 1186. The patrons fled. Id. None of the employees called 911 or took any other measures to prevent further attack. Id. The third parties tracked down one of the patrons on a nearby public sidewalk and attacked him a second time, stabbing the patron several more times. Id.
The California Supreme Court in Morris noted that the attack culminated on the public sidewalk. Id. Nonetheless, applying the Rowland factors, the California Supreme Court concluded that the proprietor had a duty to take reasonable and minimally burdensome measures to protect the patron. Id. at 1194. Morris thus illustrates that whether a proprietor has a duty to take reasonable, minimally burdensome measures to protect a patron from a criminal attack turns on the foreseeability of the attack and the other Rowland factors, not where the attack finally culminates.
The majority in this case concludes that a proprietor’s duty to take reasonable steps to protect patrons from third party attacks is limited to attacks that take place on property under the proprietor’s control. To support this view, the majority cites the California Supreme Court’s statement in Morris that a proprietor’s duty extends “to areas within the proprietor’s control.” Maj. at 1236 (citing Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1191). Because the attack in Morris culminated on a public sidewalk, the majority’s analysis implicitly reads Morris as holding that although a proprietor’s duty may extend to criminal attacks that commence on property within the proprietor’s control and then continue on property outside of the proprietor’s control, a proprietor’s duty may not extend to foreseeable criminal attacks that become imminent on property within the proprietor’s control but actually commence on property outside the proprietor’s control. Other language in Morris and prior California Supreme Court precedent, however, illustrate that this reading of Morris is incorrect.
*1243 Indeed, elsewhere in Morris, the California Supreme Court specifically explained that its foreseeability analysis “involv[ed] a proprietor’s duty to respond reasonably to criminal conduct that is imminent or even ongoing in his or her presence ...Id. at 1189 (emphasis added). The court reasoned that “when assaultive conduct is imminent” it does not require philosophical “mastery” or “economic risk analysis to appreciate the strong possibility of serious injury to persons against whom such imminent ... criminal conduct is aired.” Id. This language illustrates that a proprietor’s duty may extend to foreseeable criminal attacks that become imminent on property within a proprietor’s control, not just to criminal attacks that actually begin on property within a proprietor’s control.[2]
This broader reading of Morris is also supported by reasoning in Ann M. (Ann M.), 25 Cal.Rptr.2d 137, 863 P.2d at 213-216), an earlier California Supreme Court case cited to in Morris (See, e.g., Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1187, 1188). In Ann M., the California Supreme Court concluded that the fact that the criminal attack occurred on property outside the proprietor’s control did not preclude the existence of a duty on the part of the proprietor.
Ann M., 25 Cal.Rptr.2d 137, 863 P.2d at 213 (“[T]he existence of a duty on the part of Pacific Plaza to Ann M. is not precluded ... by [Pacific Plaza’s] lack of control over the premises where the crime occurred.”). Instead, the California Supreme Court explained, the heart of the inquiry was whether the criminal attack could have been reasonably anticipated. Id.
Ann M. involved a proprietor’s duty to safely maintain the common areas within his control to protect tenants and invitees from foreseeable, future criminal attack (Id. at 213-216), not a proprietor’s duty to take reasonable measures to protect patrons from a foreseeable, imminent criminal attack. In both cases, however, a proprietor’s duty is governed by the Rowland factors. Morris, 30 Cal.Rptr.3d 173, 113 P.3d at 1192; Ann M., 25 Cal.Rptr.2d 137, 863 P.2d at 212 n. 5. Therefore, the reasoning employed by the California Supreme Court in Ann M. is also instructive when determining a proprietor’s duty to protect a patron from a foreseeable, imminent criminal attack.
In sum, I conclude that under California negligence law, a proprietor may owe patrons a duty to take reasonable, minimally burdensome measures to protect them from foreseeable criminal attacks that become imminent on property within the proprietor’s control, even where the criminal attack ultimately culminates on property outside the proprietor’s control.
3. Conclusion
Applying California negligence law to the facts of this case, the United States *1244 owed Seaman Little a duty to take reasonable, minimally burdensome measures to protect him from Lance Corporal Thomas’s foreseeable and deadly criminal attack. This is why I respectfully dissent.

. "The MA rating provides Navy Ships and commands with force protection/antiterrorism specialists who assist in maintaining good order and discipline, law enforcement, and physical security duties. MA’s enforce appropriate orders and regulations, make apprehensions, conduct investigations/interrogations and prepare required records and reports. Due to the unique functions and trust inherent in the MA rating, the quality of personnel selected is of paramount importance and requires strict adherence to eligibility criteria.” United States Navy, https://www.cool. navy.mil/ enlisted/desc/ma_description.htm (last visited April 29, 2010).

. The majority also cites the California Supreme Court’s statement in Castaneda that "[a] landlord generally owes a tenant the duty ... to take reasonable measures to secure areas under the landlord’s control against foreseeable criminal acts of third parties.’’ Maj. at 1236 (citing Castaneda v. Olsher, 41 Cal.4th 1205, 63 Cal.Rptr.3d 99, 162 P.3d 610, 615 (2007)). This positive statement, however, does not necessarily support the negative inference that a proprietor's duty never extends to foreseeable criminal attacks that become imminent on property within the a proprietor's control but culminate on property outside the proprietor’s control. See United States v. Turkette, 452 U.S. 576, 591, 101 S.Ct. 2524, 69 L.Ed.2d 246 (U.S.1981) (noting that "negative inferences” need not be drawn from positive statements in legislative history). This is especially true in light of the fact that Castaneda did not involve property outside the proprietor’s control. Castaneda, 63 Cal.Rptr.3d 99, 162 P.3d at 613-14.