Filed 8/23/22 Beaudreau v. Burnham USA Equities CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAUL J. BEAUDREAU,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>BURNHAM USA EQUITIES, INC., et al.,<br><br>    Defendants and Respondents. | G059971<br><br>(Super. Ct. No. 30-2019-01102369)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge. Affirmed.

The Yarnall Firm and Delores A. Yarnall for Plaintiff and Appellant.

Diederich & Associates and Robert E. Henke; Greines, Martin, Stein & Richland, Robert A. Olson and Gary J. Wax for Defendants and Respondents.

## INTRODUCTION

Paul Beaudreau appeals from a judgment entered after the trial court granted summary judgment to respondents Seal Beach Village LP; Seal Beach Village SPE, Inc.; and Burnham USA Equities, Inc. (Respondents).[1] Beaudreau sued Respondents when he was seriously injured after a vehicle being parked at the Seal Beach Village shopping center jumped a concrete wheel stop and a curb, pinning him against a concrete planter. He alleged the layout of the parking lot and the shopping center made the accident foreseeable, and Respondents had a duty to protect him against it.

We affirm the judgment. We have previously spoken to this issue, and that case is directly on point. It holds that except for a few carefully defined circumstances, a commercial property owner has no duty to protect its customers from the third-party negligence curb-jumping vehicles represent. Those circumstances do not obtain here, and we do not accept Beaudreau's invitation to abandon that decision and disturb more than a quarter-century of reliance on its clear guidelines. Abandonment of stare decisis in this case would put additional burdens on businesses and commercial real estate and result in consequences both difficult and painful to contemplate.

## FACTS

The complaint in this action, filed in October 2019, consists of bare-bones allegations of dangerous premises conditions consisting of "an unsafe parking lot that dangerously channeled pedestrians such as [Beaudreau], into traffic, with the risk that they would be struck by a motor vehicle; unsafe design of the parking lot, without reasonable stops barricades or warnings; an unsafe design of the unguarded and exposed adjacent pedestrian walkways[.]" Beaudreau alleged these unsafe conditions "caused a motor vehicle to strike and injure Beaudreau, who was located on a pedestrian walkway on or about July 31, 2018[.]" Respondents moved for summary judgment in August

---

[1] Seal Beach Village LP owns a shopping center of the same name. Seal Beach Village SPE is the limited partnership's managing member, and Burnham is the property manager.

2

2020, fleshing out some of the details from interrogatory responses and declarations from their representatives.

In interrogatory responses, Beaudreau asserted that he was walking in the shopping center's pedestrian area when a car accelerated forward from a designated parking spot and pinned him against a concrete planter. He identified the driver as Diane Booth-Collin.[2]

A representative from Burnham described the area in front of the Primrose Restaurant, where the accident occurred, as having "a walkway perpendicular to the parking lot . . . that allows people to walk between stores in the shopping center. There are newspaper stands, bike racks, and benches along the walkway, but there is no fixed point along the walkway in that area which would require a patron to stand or be seated in order to receive services from a tenant of the shopping center." Another declarant, a representative of the property owner, stated she had no knowledge of any such accident having occurred at the shopping center since it was purchased in 2000, and no information any such accident had occurred before that. Photos were attached to one declaration showing the parking spot involved, with a concrete parking stop and a curb, the walkway in front of the Primrose Restaurant, and the planter involved in the accident.

In opposition, Beaudreau introduced declarations from two experts who cited statistics about the number of curb-jumping accidents and their consequences. The experts opined that the parking lot did not meet "industry standards" and that the accident was foreseeable, in light of statistics they had gathered from accidents throughout the country.

Relying on this court's opinion in *Jefferson v. Qwik Korner Market, Inc.* (1994) 28 Cal.App.4th 990, which it characterized as "directly on point," the trial court held that respondents had no duty to protect Beaudreau from the accident. The experts'

---

[2] Beaudreau's opposition to the summary judgment motion did not include his own declaration. Contrary to counsel's representation at oral argument, the record contains no sworn testimony from Beaudreau at all.

statistics did not, the court held, support a conclusion "the category of negligent conduct at issue is *sufficiently likely* to result in the kind of harm experienced that liability may appropriately be imposed." Accordingly it granted the motion for summary judgment and entered judgment in favor of respondents on December 16, 2020.

## DISCUSSION

A defendant moving for summary judgment must prove the action has no merit. It does so by showing one or more elements of plaintiff's cause of action cannot be established or that there is a complete defense to the cause of action. At this point, the plaintiff bears the burden of showing a triable issue of material fact exists. (Code Civ. Proc., § 437c, subds. (c), (o)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 849–850.)

We review the trial court's decision to grant summary judgment de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476.) The evidence submitted both in support of and in opposition to a motion for summary judgment must be admissible evidence. (Code Civ. Proc., § 437c, subd. (d).)

In this case, the element of Beaudreau's negligence causes of action assailed by Respondents is their duty to protect him from Booth-Collin's negligent driving. "Duty, being a question of law, is particularly amenable to resolution by summary judgment." (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 465.)

We first deal with the deficiencies of Beaudreau's briefing in this court as they bear on the evidence offered to show a triable issue of material fact. California Rules of Court, rule 8.204(a)(2)(C) requires the appellant to provide a citation to the record for every statement of fact in the summary of facts. A significant number of references to the record in Beaudreau's summary of facts are to his and Respondents' separate statements of undisputed facts. A reference to a separate statement, "without

4

citing where in the record we can find the evidence supporting the facts asserted," is not a proper citation to the record. "The separate statement is not evidence of anything. It is mere assertion. The evidence of the asserted facts appears elsewhere – in affidavits, depositions, etc. [The] brief should have cited to those pages in addition to the separate statement . . . ." (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024-1025, overruled on other grounds in *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607; see also 2 Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 9:36, p. 9-13).) We have disregarded the facts in the briefs unaccompanied by proper citations. (See *Stockinger v. Feather River Community College, supra*, 111 Cal.App.4th at p. 1025.)

The same rule applies to supporting "facts" with citations garnered from pleadings, like the complaint, and a memorandum of points and authorities. (See, e.g., *Champir, LLC v. Fairbanks Ranch Assn*. (2021) 66 Cal.App.5th 583, 597.) These are allegations or arguments, not evidence. (See Code Civ. Proc., § 437c, subd. (p)(2).) For example, assertions based on reports of Beaudreau's and Booth-Collin's statements on the day of the accident and afterward are unsupported "facts" in the absence of a declarations from Beaudreau and Booth-Collins themselves.

Finally, we address the police report attached as an exhibit to Beaudreau's counsel's declaration. Respondents objected on hearsay and lack of personal knowledge grounds.[3] The trial court excluded this exhibit, and Beaudreau claims this was error, citing *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). He asserts that experts are allowed to rely on hearsay in forming their opinions.

But here using the police report was not confined to the experts. Beaudreau's opposition to the summary judgment motion relied on it several times as providing the evidence of what happened on the day of the accident.

---

[3] There was also a question about authentication (Evid. Code, § 1401) because the report was submitted by Beaudreau's counsel. Respondents did not object on this ground.

5

A police report itself may qualify for the public records exception to the hearsay rule under Evidence Code section 1280.[4] But that does not end the inquiry. What people told the police officers, as recorded in the report, must also qualify for a hearsay exception. (See *Jane IL Doe v. Brightstar Residential Inc.* (2022) 76 Cal.App.5th 171, 178-179.)

In our court, Beaudreau cites to his own statements in the police report as evidence of what happened on the day of the accident. These statements are unquestionably hearsay – out-of-court statements offered for their truth. (Evid. Code, § 1200.) He does not even attempt to link them to a hearsay exception. He refers to the police report to support his assertions about the dimensions of the walkway between the planter and the parking space and about the height of the curb. The police report included the dimensions of the planter, but nothing about the height of the curb or the width of the walkway.[5]

Beaudreau also cites to Booth-Collin's statements in the police report as further evidence of what happened on the day of the accident, claiming that they qualify for a hearsay exception under Evidence Code section 1230 as declarations against interest. For this exception to the hearsay rule to apply, however, the declarant must be unavailable. Nothing was offered to show that Booth-Collin was unavailable. Beaudreau argues that Booth-Collin's statement that she was "startled" when she saw him on the sidewalk is admissible under the previously existing mental state exception of Evidence Code section 1251.[6] Once again, the declarant must be unavailable for this to work.

---

[4] Evidence Code section 1280 provides, "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness".

[5] It does not appear from their declarations that either of Beaudreau's experts visited the site. They seem to have relied solely on photographs of the scene. The officers took some photographs, but they are not included in the police report submitted into evidence.

[6] Counsel repeated this at oral argument.

6

Moreover, the declarant's mental state must be "an issue in the action." Booth-Collin's previously existing mental state has no bearing on Respondents' premises liability.

As for the experts' use of the police report, *Sanchez* prohibits experts from relying on case-specific hearsay evidence unless an exception applies. (*Sanchez, supra,* 63 Cal.4th at p. 686 ["When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay."].) To the extent the experts relied on the statements of either Beaudreau himself or of Booth-Collin, as included in the police report, in arriving at their conclusions, they have not identified a hearsay exception that would allow the admission of this evidence.

The experts' reliance on the observations of the investigating officers themselves as recorded in the police report would theoretically be permissible under the public records exception to the hearsay rule.[7] There is one problem with reliance on the police report regarding the position of Booth-Collin's car at the scene of the accident, however. The report states that the car had been moved before the officers got there, and the report did not indicate the car's position either before or after it had been moved. Their observation of the car's position is therefore of nugatory relevance. The rest of the report, mainly constituting a description of the parking lot where the accident took place, including the placement of the planter, an officer's observations of Booth-Collin's car, and another officer's conclusion that she did not appear to be drunk, does not refer to any disputed or material facts.

In short, the police report was only admissible in this case, in the absence of a challenge to the timing of its preparation or to its authentication, as far as it recorded the officers' personal observations of the scene of the accident and of Booth-Collin. This information was largely duplicated by other evidence admitted without objection, such as

---

[7] We note that the accident report was prepared on November 11, 2018, a little over three months after the accident (July 31).

Respondents' photographs, or had no bearing on Respondents' premises liability. Beaudreau has not shown how he was prejudiced by the exclusion of those parts of the report that were admissible under the public records exception. (See Evid. Code, § 354.)

We now turn to the issues of duty and foreseeability. "Duty is a question of law for the court, to be reviewed de novo on appeal." (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770 (*Cabral*).) "The conclusion that a defendant did not have a duty constitutes a determination by the court that public policy concerns outweigh, for a particular category of cases, the broad principle enacted by the Legislature that one's failure to exercise ordinary care incurs liability for all the harms that result." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1143.)

In *Rowland v. Christian* (1968) 69 Cal.2d 108, the Supreme Court explained that "the major [factors in determining the existence of a duty] are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Id.* at p. 113, superseded by statute on other grounds in *Smith v. Freund* (2011) 192 Cal.App.4th 466.)

"The foreseeability of a particular kind of harm plays a very significant role in [the duty] calculus [citation], but a court's task – in determining 'duty' – is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard*

8

*v. Uribe* (1986) 41 Cal.3d 564, 572–573, fn. 6; see also *Cabral, supra,* 51 Cal.4th at pp. 772-773.)

The issue here is the foreseeability of a third party's negligence and Respondents' duty to protect a customer on their property from someone else's negligent driving. As other courts have stated, "Commercial property owners are not insurers of the safety of their patrons, although they owe the patrons duties 'to exercise reasonable care in keeping the premises reasonably safe.' [Citations.]" (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 431.) "Because the owner is not the insurer of the visitor's personal safety [citation], the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206.)

After surveying cases nationwide regarding vehicles being parked or veering off the street and hitting people on sidewalks or in front of buildings, this court was able to distill the unusual circumstances under which courts held the owner of the property on which people were standing when they were hit had a duty to protect them from this hazard. In *Jefferson v. Qwik Korner Market, Inc.* (1994) 28 Cal.App.4th 990 (*Jefferson*), we dealt with a case in which a boy was injured when a driver parking his car accidentally stepped on the gas instead of the brake, causing his car to jump a concrete parking block and then the curb. (*Id.* at p. 992.) Our survey led to the conclusion that in most cases the accident was not foreseeable, and thus the property owner had no duty to guard against it. (*Id.* at p. 993.) The minority cases holding that the property owner did or might have a duty to prevent such accidents were those in which (1) the business provided no protection whatsoever (e.g., a curb) from encroaching vehicles, (2) a similar accident had occurred prior to the one in question, or (3) the building design required customers to wait for service near a driveway or parking lot. (*Id.* at pp. 994-995.) Since none of these circumstances applied in *Jefferson*, the accident was not foreseeable, and the owner had no duty to protect people from errant vehicles. (*Id.* at p. 997.)

9

The question now before us, then, is whether Respondents had a duty to protect someone walking on a sidewalk abutting a parking lot from a negligent driver. "[A] duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676, overruled on other grounds in *Reid v. Google, Inc*. (2010) 50 Cal.4th 512.)

*Jefferson* provides the correct analytical framework for this case. The holding of that case is simple, straightforward, and on all fours with this one. As we noted in that case, the majority rule is that the property owner is not responsible for an injury from a vehicle leaving the road. Only in three instances is the property owner charged with a duty: when there is no barrier whatsoever, when it knows of a prior similar incident, or when the building design requires customers to wait for service near a driveway or parking lot. (*Jefferson, supra,* 28 Cal.App.4th at pp. 993-995.) We cautioned that "foreseeable" does not mean "simply imaginable or conceivable." (*Id.* at p. 996.)

Beaudreau cited two California cases in which a duty to protect a pedestrian from a runaway vehicle was found: *Bigbee v. Pacific Tel. & Tel. Co*. (1983) 34 Cal.3d 49 (*Bigbee*) and *Robison v. Six Flags Theme Parks Inc*. (1998) 64 Cal.App.4th 1294 (*Robison*).

In *Bigbee*, the plaintiff sued telephone-related companies for injuries suffered when a drunk driver crashed into the telephone booth in which he was standing. (*Bigbee, supra,* 34 Cal.3d at p. 52.)[8] In light of the booth's placement, close to a busy street, *and because a car had crashed into the phone booth in the past*, the court held that there was an issue of fact as to whether another car crashing into the booth was

---

[8] The theory of liability in *Bigbee* was negligence and strict liability, not premises liability. (*Bigbee, supra,* 34 Cal. 3d at p. 52.) It is not clear that the property owner was among the defendants; they seem to have all been related to the telephone company and "allegedly responsible for the design, location, installation, and maintenance of the telephone booth." (*Ibid*.)

10

foreseeable.  (*Id.* at p. 58.)  The court reversed the defendants' summary judgment.  (*Id.* at p. 60.)

In *Robison*, a group of people was sitting at a table in the Magic Mountain picnic area – a grassy island in the middle of the paved parking lot – when a car that was supposed to stop and turn at a T intersection plowed straight ahead and struck the table, injuring the picnickers.  There was no barrier of any kind between the picnic area and the parking lot. (*Robison, supra,* 64 Cal.App.4th at pp. 1296-1297.)  The court framed the foreseeability issue as "whether it was reasonably foreseeable, in view of the configuration and use of the parking lot and picnic area, that a car might fail to turn left at the word 'stop' painted on the pavement, and that picnickers might be injured as a consequence of Magic Mountain's failure to provide an appropriate separation between the parking lot and the picnic area," or, more succinctly, "an errant car hitting an unprotected picnic table." (*Id.* at p. 1299.)  Holding that the injury was foreseeable, the court reversed the defense summary judgment. (*Id.* at pp. 1304-1305.)

These two cases, in which the injury was or might be foreseeable, conform to the exceptions we recognized in *Jefferson.*  In *Bigbee,* a similar accident had previously occurred, and in *Robison,* there was no barrier whatsoever between the road and the picnic area.  In this case, however, there was no evidence of prior accidents, and both representatives of respondents declared that they had no knowledge of any prior accidents.  And there were, in fact, two barriers to the car – the concrete parking stop and curb between the parking lot and the sidewalk.

The rest of Beaudreau's case citations are limited to (1) California cases having nothing to do with parking or curb-jumping (see, e.g., *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077 [landowner's duty to protect customer crossing street from parking lot]; *Kerrigan v. Lowe's Home Centers, LLC* (C.D. Cal., Sept. 15, 2015 [2015 U.S. Dist. LEXIS 199056] [palm trees blocked exiting pedestrian's view of driveway]; *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607 [criminal

11

assault of student on campus]) or (2) cases from other jurisdictions, some of which have different rules regarding duty. Cases having to do with the design of a parking lot (*Annocki v. Peterson Enterprises, LLC* (2014) 232 Cal.App.4th 32 [failure to warn about right turn only at exit]), or with a steep driveway to an apartment building that shunted children into a busy street (*Barnes v. Black* (1999) 71 Cal.App.4th 1473), or with falling off a wall on the way to a restaurant (*Johnston v. De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394) all present different combinations of *Rowland* factors. Similarly, cases from other jurisdictions in which duty and foreseeability are *always* jury questions are of no assistance here.

Beaudreau's opposition to the summary judgment motion included declarations by two experts, one in the "prevention of vehicle incursions into commercial buildings" and the other in "providing design, planning and management of parking lots and multi-level parking structures."[9] Both experts opined that the accident was foreseeable, and they provided statistics on the results of curb-jumping: a death every 18 hours and serious injury every 2 1/2 hours and an estimated 4,000 seriously injured and 500 killed by cars in parking lots, storefronts and commercial and public buildings each year.[10]

These statistics would be of great interest to designers of shopping centers and people responsible for building codes. But the issue before us is one of duty, which depends in this case on foreseeability. For our purposes an important data point is missing: compared to what? How often were cars parked in commercial parking lots similar to the one at issue here when nothing happened? How many billions – trillions? – of cars are parked without resulting in the kinds of injuries the experts' statistics reflect?

---

[9] This expert doubles as an authority on product liability. His declaration included two paragraphs about the guidelines for developing safe products and Respondents' failure to design their products according to these guidelines.

[10] In ruling on Respondents' objections to Beaudreau's evidence, the court stated that it had not considered the experts' opinions on duty of care and negligence because they were improper legal conclusions.

12

One expert did give us a clue. He estimated that the turnover at the parking stall at issue in this case was "over 30 park and un-park movements per day." This is for one parking stall in the complex. The declarant for Burnham, the property management company, stated that she was not aware of any prior curb-jumping incidents since she had begun managing the property in 2006 and had no notice of any curb-jumping since 2003, when Burnham began managing the property. The declarant for Seal Beach Village LP, the property owner, stated that the limited partnership purchased the property in 2000, and she was unaware of any prior curb-jumping incidents since that time, as well as any such incident occurring before the limited partnership bought the property.[11] So for that one parking stall alone, 194,400 "park and un-park movements" had occurred without mishap over at least 18 years.[12] We do not know how many parking stalls abutting a walkway the shopping center maintains, but each one arguably represents well over 100,000 "park and un-park movements" that have occurred without any curb-jumping since 2000. If there are just 11 parking stalls comparable to the one where the accident occurred, there were over 2 million non-curb-jumping "park and un-park movements" at the shopping center since the limited partnership bought it.

The other expert stated that his organization found 1800 incidents of vehicle-into-storefront crashes in California, including five such incidents in Seal Beach over three years, "so such an incident should have been foreseeable to the defendants." One of the Seal Beach accidents in the data he referred to was this one, and two more occurred *after* this accident, leaving two crashes occurring in Seal Beach in the five years

---

[11] Beaudreau now objects that these declarations lacked foundation, but he did not file any objections to them in the trial court, so they are waived. (Code Civ. Proc., § 437c, subd. (d); *Rodriguez v. E.M.E., Inc.* (2016) 246 Cal.App.4th 1027, 1045.) He also argues that *only* these two declarants testified about the absence of curb-jumping events. He supplies no authority to the effect that everyone in an organization must submit declarations in order to establish the non-occurrence of an event. The two declarants were in sufficiently high positions in their respective companies – vice-president of the limited partnership and the manager of the shopping center for the management company – to indicate their competence to testify on this issue. The third respondent, the managing partner of the limited partnership, can be assumed to have the same knowledge as the limited partnership itself and therefore did not need to file a separate declaration regarding its knowledge of curb-jumping incidents.

[12] We have multiplied 30 by 360, to be on the conservative side.

preceding this accident as evidence of foreseeability. Misrepresenting statistics in this way undermines an expert's credibility and calls into question the reliability of the other statistics he presents.

We consider the ill-starred confluence of events necessary for these kinds of accidents to occur. In this case, Booth-Collin had to be pulling into a shopping center parking space at the exact moment – not 10 seconds sooner or later – when Beaudreau was walking in front of that particular space. She had to accidentally step on the gas instead of the brake at that exact moment and avoid the cars parked on either side of the space in front of Beaudreau. Of course, it could happen because it did. But how *foreseeable* is such a confluence? *Jefferson* held that such facts are not sufficiently foreseeable to impose a duty on the landowner to take protective measures.

In response, Beaudreau argues that *Jefferson* does not apply. He notes some differences between the facts in that opinion and the facts in the case before us. For example, Beaudreau points to the difference between the measurements given in *Jefferson* and the dimensions of Respondents' parking stall. He also notes the absence of a planter at the store in *Jefferson* and the presence of a declaration from an architect asserting that the *Jefferson* parking lot complied with city codes.[13]

In the opposition to the summary judgment motion, Beaudreau raised only the purported difference in dimensions as the reason to distinguish *Jefferson.* Although *Jefferson* did give the dimensions of the parking space (*Jefferson, supra,* 28 Cal.App.4th at p. 992), there is no comparable evidence in this case. The police report, the sole source of information on this point, gave the dimensions of the planter, but not the width of the walkway, the height of the curb, or the dimensions of the wheel stops.[14] In addition,

---

[13] In his reply brief, Beaudreau criticizes *Jefferson* for failing to include a *Rowland* factor analysis.

[14] Beaudreau embellishes his discussion of *Jefferson* with scenarios of what might have happened in Respondents' parking lot, but did not.

14

*Jefferson* did not limit its holding to situations in which the dimensions of the sidewalk, the curb, and the wheel stops were identical to or greater than the ones in the case.

The other arguments Beaudreau presents now were not included in his opposition. They were mentioned only at the hearing, when Respondents had no opportunity to answer them in their reply.

*Jefferson* did not make the general absence of a property owner's duty to protect a customer from third-party negligence in these cases dependent on an architect's declaration.[15] It was based – after an exhaustive survey of existing authority – on lack of foreseeability. Imposition of this duty depended on the existence of three separate circumstances: a prior accident, the absence of any barrier, or the requirement to stand and wait for service. None of these circumstances is present in this case.

Beaudreau now argues that the trial court failed to consider theories of liability other than the lack of additional barriers such as bollards. He asserts he also pleaded unsafe design of the walkway and failure to warn. The concrete planter at the site narrowed the walkway into a "pinch point," he alleged, thereby creating a dangerous condition for pedestrians, for which there was no warning.[16] We note that Beaudreau did not make this argument in the trial court as a basis for denying summary judgment, either in its opposition or at the hearing. He also now asserts that *Jefferson* did not deal with these situations and so is not authority for summary judgment on them. He did not make this argument in the trial court either. We can't correct "mistakes" the trial court was not given the opportunity to make.

---

[15] At oral argument, counsel claimed a prior summary judgment motion in *Jefferson* was denied because the defendant had not submitted an expert declaration regarding compliance with city codes, asserting the presence of such a declaration was the reason the motion was finally granted. Nothing in *Jefferson* explains why the first motion was denied, and the opinion refers to "[a]dditional supporting documents," including the expert's declaration, as accompanying the second motion. (*Jefferson, supra,* 28 Cal.App.4th at p. 992.)

[16] At oral argument, counsel raised the entirely new notion that Respondents should have blocked off the walkway in front of the parking space and put up a sign "Not a Pedestrian Walkway." This was too late to be advancing new arguments.

*Jefferson* held, in essence, that a commercial property owner has no duty to protect a customer from curb-jumping vehicles except in certain well-defined instances. Although the plaintiff in *Jefferson* complained about the lack of bollards (*Jefferson, supra,* 28 Cal.App.4th at p. 992), the opinion itself took a much broader view. After examining "case law regarding cars negligently coming onto sidewalks of businesses," this court concluded that there is no liability in general "because such accidents are insufficiently likely as a matter of law." (*Id.* at p. 993.) Only in the three scenarios articulated in *Jefferson* is injury from a curb-jumping vehicle sufficiently foreseeable that a property owner is charged with a duty to protect its customers. (*Id.* at pp. 994-996.)

Beaudreau's other theories of liability are simply variations on the same theme: the property owner has a duty to protect customers from curb-jumping vehicles. All theories of negligence, however formulated, begin with the imposition of a duty. (See *Kesner, supra,* 1 Cal.5th at p. 1158 ["The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, a breach of that duty, and proximate cause resulting in injury."]; *Paz v. State of California* (2000) 22 Cal.4th 550, 559.) "As to any given defendant, only one standard of care obtains under a particular set of facts, even if the plaintiff attempts to articulate multiple or alternate theories of liability." (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 998.) Whether Beaudreau characterizes Respondents' duty as installing bollards, designing walkways in a certain way, or posting warning signs ("Beware of curb-jumping cars"), all rest on the premise that the property owner has an inherent duty to do something. *Jefferson* holds that it does not.[17]

---

[17] In his reply brief, Beaudreau makes an entirely new argument that Respondents had a duty to protect him because of a "special relationship" between them, based apparently on a belated awareness of *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204 (*USA Taekwondo*). *USA Taekwondo* does not include a commercial property owner and its customer in its list of those having a "special relationship." (*Id.* at p. 216.) In addition, we do not consider legal theories and arguments raised for the first time in a reply brief because the other side has no opportunity to respond. (See *Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1388-1389.)

Finally, Beaudreau argues that *Jefferson* is outdated and should be abandoned, citing statistics and "industry standards" that have accumulated in the subsequent years. *Jefferson* was decided in 1994. Beaudreau's experts proffered present-day statistics of store-front crashes, but they did not provide comparable statistics for the early 1990's. Thus, they did not establish that things are worse now, comparatively speaking, than they were then. Even more important, however, duty and foreseeability, as many courts have recognized, have both a factual and a policy component. *Jefferson* articulated a formula for both in curb-jumping cases that has been undisturbed for over a quarter of a century by either our Supreme Court or our Legislature and that clearly identified the circumstances under which a commercial property owner would have a duty to protect its customers. Changing that formula now has far-reaching implications that we, with only this specific set of facts and these parties before us, cannot hope to anticipate.[18] Expanding a property owner's duty in these cases should be the province of the Supreme Court, if not of the Legislature itself with its superior resources for obtaining wide-ranging information and for considering all sides of an issue.

---

[18] For example, Beaudreau argued that the shopping center's close proximity to Leisure World, with its large population of senior citizens, should figure into the foreseeability analysis because seniors are more likely to be poor drivers. No means of quantifying that consideration was offered.

## DISPOSITION

The judgment is affirmed.  Respondents are to recover their costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18