Filed 5/1/26  Doe v. Sigma Alpha Mu Fraternity CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JANE DOE, | B341946 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV46495) |
| v. | |
| SIGMA ALPHA MU FRATERNITY, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Rolf M. Treu, Judge.  Affirmed.

Hillary Johns, Trial Lawyer, Hillary Johns and Stephen M. Sirota for Plaintiff and Appellant.

Yoka Smith, Mary Childs, Patrick Ball and Shauna W. Avrith for Defendants and Respondents.

———————————————

Plaintiff and Appellant Jane Doe was allegedly raped by a university fraternity member during a party hosted by the fraternity's local chapter at its leased residence (the Chapter House). Plaintiff brought negligence claims against Defendant and Respondent Sigma Alpha Mu, Inc. (SAM Inc.), which is the national fraternity to which the local chapter belongs, and the following affiliated entities: Defendants and Respondents SAM USC Housing, LLC (SAM USC), the owner of the Chapter House and the local chapter's landlord; SAM Property Management, LLC (SAM PM), the property manager; and SAM National Properties, LLC (SAM National), SAM USC's managing entity. Plaintiff also sued the alleged rapist, the local chapter, and the security company that the local chapter had hired for the event, none of whom are parties to this appeal.

SAM USC, SAM PM, and SAM National (collectively "Defendants") filed a joint motion for summary judgment. The trial court granted the motion, concluding that Defendants did not owe Plaintiff a duty, as alleged in her operative complaint, to hire security guards for the local chapter's party (as the local chapter allegedly did) and to implement a system to prevent service of alcohol to underage partygoers. The trial court also overruled Plaintiff's objections to various evidence and sustained Defendants' objections to the declaration of Plaintiff's expert witness, who opined that Defendants had a duty to provide security of an unspecified nature. Plaintiff appealed from the judgment in Defendants' favor.

Plaintiff also appealed from a separate judgment in favor of SAM Inc., which had filed a separate summary judgment motion. However, Plaintiff's appellate briefs raised no issue concerning the judgment in SAM Inc.'s favor. Moreover, Plaintiff omitted

2

the separate evidence and moving papers related to SAM Inc.'s motion from her appellant's appendix (and did not address those documents in her reply brief, after Defendants included them in their respondents' appendix). Accordingly, we agree with Defendants' argument that Plaintiff forfeited any challenge to the judgment in SAM Inc.'s favor. (E.g., *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 (*Lee*) [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]" ' "].) We need not further discuss the proceedings involving SAM Inc.

As to the judgment in Defendants' favor, Plaintiff argues that (1) the trial court prejudicially erred by overruling her evidentiary objections and sustaining Defendants'; and (2) the trial court erred by concluding that Defendants did not owe her a duty to implement her proposed security measures at the local chapter's party. We conclude that Plaintiff forfeited her challenge to the admission of Defendants' evidence by failing to present a reasoned argument regarding prejudice, and that the trial court properly sustained Defendants' objections to the relevant portions of her expert's declaration. On the merits, assessing the scope of Defendants' duty as landlords (or assumed alter egos of the landlord) to protect guests at the Chapter House from third-party sexual assault, we agree with the trial court's conclusion that Defendants did not have a duty to hire security guards for the local chapter's party or to implement a system to prevent service of alcohol to underage attendees. Accordingly, we affirm the judgments. We need not address Plaintiff's arguments regarding alter ego liability and punitive damages.

# BACKGROUND

### A. SAM USC purchased the Chapter House, leased it to the local chapter, and hired SAM PM as the property manager.

SAM Inc. is a nonprofit college fraternity. It recognizes approximately 48 local chapters at various colleges and universities in the United States and Canada. The local chapter at the University of Southern California (USC) is the Sigma Alpha Mu Fraternity, Mu Theta Chapter at University of Southern California (Mu Theta). Mu Theta is an unincorporated association of undergraduate students.

In 2015, SAM Inc. created SAM National and SAM PM for the purposes, respectively, of obtaining housing for local chapters and providing property management services. SAM National recruited 27 investors to form SAM USC. Under SAM USC's operating agreement, SAM National has the power to manage SAM USC's business and affairs.

On July 1, 2019, SAM USC purchased the Chapter House, located at 904 West 28th Street in Los Angeles. SAM USC leased the Chapter House to Mu Theta and hired SAM PM as the property manager. As permitted by the lease, Mu Theta executed residency agreements with individual Mu Theta members, including Peter Hwang.

The lease authorized SAM USC and SAM PM to enter the Chapter House with prior notice to conduct regularly scheduled periodic inspections or repairs. Otherwise, the lease required Mu Theta to notify SAM USC or SAM PM of any need for repairs. SAM PM's custom and practice was to inspect the Chapter House for dangerous conditions and other maintenance issues annually, prior to the beginning of each academic year at USC. Before

4

January 25, 2020, SAM PM did not identify any dangerous condition at the Chapter House or receive notice from Mu Theta of any dangerous condition there.

**B.**  **Defendants knew of a general risk of sexual assault at fraternity parties but had no notice of any sexual assault allegations against Mu Theta or Hwang, or of Mu Theta's intent to host a party.**

SAM Inc. procured a liability insurance policy that applied to itself, SAM USC, SAM PM, and SAM National.  The policy covered sexual abuse or misconduct (unless the insured actively participated in or directly caused the abuse or misconduct).

SAM Inc. maintained a risk management policy that addressed known risks at fraternity parties.  The policy prohibited sexual assault and other sexually abusive behavior.  SAM Inc.'s executive director, Andy Huston, testified that sexual assault is a known risk at fraternity parties.

The risk management policy also prohibited illegal use of alcohol and other drugs at fraternity events and on chapter premises.  SAM Inc. warned Mu Theta and its members that violations of the risk management policy could lead to suspension or termination of their membership in the fraternity.

SAM USC hired one of its investors, Blake Newman, as a live-in residential advisor to monitor the Chapter House and to report violations of fraternity rules to SAM USC and SAM PM.  The record contains no evidence that Newman observed or reported any violations.

At the time SAM USC purchased the Chapter House, Mu Theta was on probation with USC and SAM Inc.  Huston testified that he believed Mu Theta's probation "was a result of some hazing allegations."  The record contains no other evidence

regarding the reasons for Mu Theta's probation. Its probation ended in December 2019 (the month before Hwang allegedly raped Plaintiff on January 25, 2020).

SAM PM's president, Teresa Wright, declared: "Prior to the alleged incident, SAM PM did not have any information that Hwang was dangerous or had a history of sexually assaulting females. SAM PM also did not have any knowledge that Mu Theta had any reputation at USC for sexually assaulting females, or that anyone had ever accused a Mu Theta member in the past of sexually assaulting them." The trial court overruled Plaintiff's foundation and hearsay objections to the quoted portion of Wright's declaration. Wright had worked for SAM PM as a property manager from the time it first started managing the Chapter House to the time of the incident. She had never met Hwang.

SAM USC and SAM PM had no advance notice that Mu Theta intended to host a party on January 25, 2020. SAM USC did not have any policy that required Mu Theta to obtain security for parties (as noted below, however, Plaintiff alleges that Mu Theta hired security for the January 25 party). No employee of SAM PM was present during the party.[1]

## C. According to Plaintiff's complaint, Mu Theta hosted a party at the Chapter House and hired security guards. Plaintiff attended the party, where Hwang forced her into a gym and raped her.

In connection with Defendants' motion for summary judgment, the parties cited Plaintiff's complaint (rather than

---

[1] SAM National and SAM USC had no employees. Thus, no employee of any Defendant was present during the party.

admissible evidence) to describe the alleged events of January 25, 2020. We summarize the following factual allegations in Plaintiff's complaint to provide context for her claims.

On January 21, 2020, Mu Theta entered into an event services agreement with The Perfect Event, Inc. (TPE), concerning a party scheduled to take place at the Chapter House on the evening of January 25.[2] Pursuant to the agreement, TPE provided 10 "security and/or event staff" members for the party. The agreement provided: "TPE will monitor the event to reasonably ensure that only invited guests are permitted into the Event. If applicable, event staff shall require identification to verify guests are of legal drinking age, and shall supply identifying wristbands where necessary." The agreement indicated that Mu Theta (not TPE) would host a bar.

On January 25, Plaintiff visited a friend at USC, drank alcohol in her friend's student housing, and accompanied her friend to Mu Theta's party at the Chapter House. Plaintiff, who was then under 21 years old, showed her ID to individuals at the door (presumably TPE staff). Those individuals did not provide her with any wristband or other symbol that would identify her as under 21. Inside, although Plaintiff was "visibly intoxicated," a bartender served Plaintiff alcohol, without checking her ID.

During the party, Hwang (who was sober) forced Plaintiff into the Chapter House's gymnasium, where he raped her. Plaintiff sustained injuries, including vaginal tearing and

---

[2] Plaintiff attached the event services agreement to her complaint, incorporated it therein by reference, and alleged that TPE provided services as required by the agreement. SAM Inc. also submitted the agreement as an exhibit in support of its separate motion for summary judgment.

bleeding, a black eye, bruising, and scratches. After Hwang left, Plaintiff exited the gym and, with her friend's assistance, walked back to her friend's housing.

Plaintiff sought medical treatment at a rape treatment center and reported the rape to police. She also filed a complaint against Hwang with USC, which determined that Hwang violated USC's policy against sexual assault. USC expelled Hwang. Plaintiff does not allege, and the record contains no evidence, that Hwang was criminally charged.

**D.    Plaintiff sued Defendants for negligence, alleging they had a duty to implement certain security measures at Mu Theta's party. The trial court granted Defendants summary judgment, concluding they did not owe Plaintiff the alleged duty.**

In December 2021, Plaintiff sued Defendants (as well as Hwang, Mu Theta, TPE, and SAM Inc.). Her operative, second amended complaint alleged that Defendants were alter egos of each other and of SAM Inc. (but not of Mu Theta). The complaint asserted causes of action against Defendants for negligence; premises liability; negligent hiring, retention, and supervision; and negligent infliction of emotional distress.[3]

Plaintiff alleged that Defendants owed her a duty, based on a special relationship arising from their ownership or alleged

---

[3] The complaint's caption identified Plaintiff's second cause of action as a claim for premises liability. In contrast, the body of the complaint identified the second cause of action as a claim for negligent hiring, retention, and supervision (which would appear redundant of the fifth cause of action for negligent hiring, retention, and supervision). The trial court treated the second cause of action as a premises liability claim. We do the same.

control over the Chapter House, to protect her from third-party sexual assault at any event hosted by Mu Theta on the premises. She further alleged that Defendants' duty encompassed obligations to (1) hire and train security guards for any events at the Chapter House, in a manner "adequate" to prevent attendees from using illegal drugs and from entering the house gym; (2) implement a "system" to ensure that alcohol was not served to attendees below the legal drinking age (e.g., by hiring and training bartenders to check IDs before serving alcohol); and (3) implement an unspecified "safety system." Plaintiff alleged that Defendants breached their duty of care by failing to implement those proposed security measures.

Defendants moved for summary judgment. As relevant, Defendants argued that all of Plaintiff's claims against them failed as a matter of law because they did not owe Plaintiff a duty to implement her proposed security measures at Mu Theta's party. Defendants supported the motion with declarations from Wright (SAM PM's president) and Huston (SAM Inc.'s executive director). Plaintiff filed 20 evidentiary objections (each stating multiple legal grounds) to Wright's and Huston's declarations.

In addition to other evidence, Plaintiff produced an expert declaration from real estate agent Luis Oliver. As relevant, Oliver's declaration stated multiple, materially identical opinions to the effect that Defendants owed Plaintiff a duty of care to protect her from a known risk of sexual assault at the Chapter House, including by providing "security." Oliver did not define "security" or expressly address whether Defendants had a duty to hire security guards.

Defendants filed objections to 18 paragraphs in Oliver's declaration, 11 of which included his opinions about duty.[4] Defendants objected to Oliver's opinions under Evidence Code sections 702, 801, and 803, on the grounds that they lacked adequate foundation and constituted impermissible legal opinions.[5]

After a hearing, the trial court sustained Defendants' objections to Oliver's declaration, overruled Plaintiff's objections to Wright's and Huston's declarations, and granted Defendants' motion for summary judgment. For purposes of its duty analysis, the trial court treated both SAM USC (the owner of the Chapter House and Mu Theta's landlord) and SAM PM (the property manager) as landlords. Applying the framework our Supreme Court adopted in *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213-1214 (*Castaneda*), for determining the scope of a landlord's duty to protect tenants and invitees from third-party crime, the trial court identified the specific security measures that Plaintiff

---

[4] Defendants' remaining seven objections targeted Oliver's opinions that Defendants did not function independently, that they conducted business in California without proper registration, and that they created a risk at the Chapter House by purportedly "making it clear" to unspecified people that Defendants would not take measures to reduce risks there.

[5] Presumably due to a drafting error, Defendants' objection to paragraph 18 of Oliver's declaration failed to state any grounds for the objection. In paragraph 18, Oliver opined: "The fact that SAM National Properties was so involved in . . . the Subject Property, and that this was part of an investment scheme as a whole, means that it has a duty of care as to how the Subject Property is managed and maintained, including . . . the duty to protect against known risks . . . ."

proposed in her complaint and concluded that those measures would be "highly burdensome" for Defendants to implement. The trial court concluded that Defendants had no duty to implement such burdensome measures because Defendants' evidence indicated that sexual assault at the Chapter House was not "highly" foreseeable, and because Plaintiff's evidence failed to raise a triable issue to the contrary.

Regarding SAM National, the trial court observed that Plaintiff identified no basis for imposing a duty on SAM National other than her allegation that it was an alter ago of the other Defendants. The trial court concluded that "the question of alter ego is moot and irrelevant" based on its conclusion that *no* Defendant owed Plaintiff a duty to implement the burdensome security measures she proposed. Accordingly, the trial court granted Defendants summary judgment on the ground that they did not owe Plaintiff the alleged duty underlying all of Plaintiff's claims against them.

The trial court entered judgment for Defendants. Plaintiff filed a timely notice of appeal.

## DISCUSSION

### A. Standards of review

We review a trial court's grant of summary judgment de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

As for a trial court's evidentiary rulings in connection with a motion for summary judgment, "[t]he weight of authority . . . supports application of the abuse of discretion

11

standard [citations], but courts have concluded that de novo review is appropriate where written evidentiary objections on summary judgment are based on questions of law." (*640 Octavia, LLC v. Pieper* (2023) 93 Cal.App.5th 1181, 1190.)  Here, we need not determine which standard applies because, as explained below, we conclude that Plaintiff fails to show reversible error under either standard.  (See *ibid.*)

"No judgment shall be set aside . . . on the ground of . . . the improper admission or rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; see also Evid. Code, §§ 353, 354.)  " '[A] "miscarriage of justice" should be declared only when . . . it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)  The appellant bears the burden to show such a probability.  (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 308.)

## B. Plaintiff fails to show prejudicial evidentiary error.

Plaintiff argues that the trial court prejudicially erred by overruling her objections to portions of Wright's and Huston's declarations and by sustaining Defendants' objections to the declaration of her expert witness, Oliver.  As explained below, we conclude that she forfeited her challenge to the admission of the objected-to portions of Wright's and Huston's declarations, and that the trial court properly sustained Defendants' objections to the relevant portions of Oliver's declaration.

12

### 1. Plaintiff forfeited her challenge to the admission of evidence by failing to present a reasoned argument regarding prejudice.

As noted, " ' "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with *reasoned argument and citations to authority*, we treat the point as [forfeited]." ' " (*Lee, supra*, 41 Cal.App.5th at p. 721, italics added.) " '[An appellant's burden] requires more than simply stating a bare assertion that the judgment, or part of it, is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment . . . .' " (*Ibid.*)

"Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial." (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) "It is an appellant's duty to spell out in the briefing exactly how a claimed error caused prejudice; put another way, we do not presume prejudice. Accordingly, the failure to explain with particularity how a claimed error caused prejudice forfeits the claim." (*People v. Reardon* (2018) 26 Cal.App.5th 727, 740; accord, *Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 614-615 (*Adams*); *Oswald v. Landmark Builders, Inc.* (2023) 97 Cal.App.5th 240, 247, fn. 4.)

Here, Plaintiff's opening brief restates her "20 evidentiary objections with 188 subparts" to Wright's and Huston's declarations, and asserts that the trial court prejudicially erred by overruling each objection. In discussing prejudice, however, Plaintiff makes no attempt to explain how excluding the challenged evidence from the record would establish error in the judgment. Her opening brief merely asserts that the trial court

13

relied on unspecified challenged evidence in an unspecified manner—she does not cite specific evidence or specific portions of the trial court's summary judgment ruling. Her reply brief specifies only that the trial court relied on Wright's and Huston's assertions that Defendants functioned as separate entities (i.e., not as alter egos).

However, the trial court concluded that "the question of alter ego is moot and irrelevant" based on its conclusion that *no* Defendant owed Plaintiff a duty to implement her proposed security measures at Mu Theta's party. As explained below, we agree with the trial court's dispositive conclusion regarding duty. Thus, Plaintiff was not prejudiced by the admission of the challenged evidence that Defendants were not alter egos.

Plaintiff does not attempt to explain how the admission of any other challenged evidence prejudiced her. Because Plaintiff did not support her assertion of prejudice with reasoned argument and citation to the record, we conclude that she forfeited her claim of prejudicial evidentiary error. (*Lee*, *supra*, 41 Cal.App.5th at p. 721; *Adams*, *supra*, 224 Cal.App.4th at pp. 614-615.)

Moreover, we have reviewed the objected-to portions of Wright's and Huston's declarations and concluded that they are immaterial to our duty analysis, with one exception. Specifically, the trial court overruled Plaintiff's foundation and hearsay objections to the following portion of Wright's declaration: "Prior to the alleged incident, SAM PM did not have any information that Hwang was dangerous or had a history of sexually assaulting females. SAM PM also did not have any knowledge that Mu Theta had any reputation at USC for sexually assaulting

14

females, or that anyone had ever accused a Mu Theta member in the past of sexually assaulting them."

Wright worked for SAM PM as a property manager from the time it first started managing the Chapter House to the time Hwang allegedly assaulted Plaintiff. At the time of her declaration, she was SAM PM's president and one of only two SAM PM employees (the second being her successor as property manager). Plaintiff does not address Wright's experience and position with SAM PM, much less cite authority indicating that it supplied an insufficient foundation for her representations that SAM PM was unaware of any prior accusations against Hwang or Mu Theta. Nor does Plaintiff explain why the challenged portion of Wright's declaration, which did not mention any statement by another person, allegedly violated the hearsay rule.

For these additional reasons, we conclude that Plaintiff forfeited her assertion that the trial court prejudicially erred by admitting the challenged portion of Wright's declaration. (See *Lake Lindero Homeowners Assn., Inc. v. Barone* (2023) 89 Cal.App.5th 834, 838, fn. 2 [appellant waived claim that trial court erroneously excluded evidence, because he failed to support it with reasoned argument and citation to authority and "fail[ed] to address, let alone satisfy, his burden to demonstrate a miscarriage of justice occurred"].)

**2. The trial court properly sustained Defendants' objections to Oliver's opinions that Defendants owed Plaintiff a duty of care. In any event, the exclusion of Oliver's opinions was harmless.**

" 'A party cannot rely upon an expert's opinion to establish duty, which is a question of law for the court.' [Citation.] Nor can a party create a triable issue of fact on the issue of duty

15

through expert opinions, because again, the existence of a duty in a given factual situation is an issue of law for the court to resolve." (*Harding v. Lifetime Financial, Inc.* (2025) 109 Cal.App.5th 753, 763 (*Harding*); accord, *Vulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 259, fn. 6; *Swigart v. Bruno* (2017) 13 Cal.App.5th 529, 540, fn. 14; see also *Castaneda*, *supra*, 41 Cal.4th at p. 1213 [existence *and scope* of property owner's duty to protect against third-party crime are questions of law for the court].)

Here, in relevant part, Oliver's declaration stated multiple, materially identical opinions to the effect that Defendants owed Plaintiff a duty of care to protect her from a known risk of sexual assault at the Chapter House, including by providing unspecified "security." Defendants objected to the paragraphs of Oliver's declaration containing his duty opinions, on the grounds that they set forth legal conclusions that were not proper subjects of expert opinion. Based on the authority cited above, we conclude that the trial court properly sustained those objections. (E.g., *Harding*, *supra*, 109 Cal.App.5th at p. 763.)

Plaintiff argues that Oliver's opinions were admissible under authority permitting experts to testify about the *standard* of care. However, the standard of care is an issue of breach, which becomes relevant only if a *duty* of care supports the plaintiff's claim. (See *Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916, 929 ["the responsibility of defining duty in a tort case reposes with the court [citation] and we neither know of nor have been cited to any authority permitting us to rely on [a declaration about the standard of care] to redefine an insurance agent's duty of care"]; *Mosca v. Lichtenwalter* (1997) 58 Cal.App.4th 551, 554 ["the standard of care . . . is reached only if the threshold

16

question of duty is resolved against the defendant"].) To the extent the excluded portions of Oliver's declaration concerned the standard of care or other issues distinct from duty (e.g., alter ego liability), the exclusion was harmless in light of our conclusion below that the scope of Defendants' alleged duty to protect guests at the Chapter House from third-party sexual assault did not require Defendants to implement Plaintiff's proposed security measures at Mu Theta's party.

Plaintiff also argues that Defendants' objections violated the Rules of Court by failing to quote the objectionable material. However, in lieu of quotation, the Rules of Court allow the objecting party to "set forth" the objectionable material. (See Cal. Rules of Court, rule 3.1354(b)(3).) Here, for each objection, Defendants identified a challenged paragraph of Oliver's declaration and set forth a description of the objectionable material therein (e.g., "In this paragraph, Mr. Oliver provides 'expert' opinions on the standards of care for the various Defendants"). Plaintiff does not acknowledge those descriptions, much less argue that they failed to satisfy the Rules. Even assuming, arguendo, Defendants failed to adequately set forth Oliver's duty opinions as the objectionable material, Plaintiff cites no authority—and we are aware of none—holding that such a procedural error compels a trial court to overrule otherwise meritorious objections and to admit improper expert opinions into evidence.

We acknowledge that one of the sustained objections erroneously failed to state any substantive grounds. (See Cal. Rules of Court, rule 3.1354(b)(4).) That objection targeted paragraph 18 of Oliver's declaration, in which he opined: "The fact that SAM National Properties was so involved in . . . the

17

Subject Property, and that this was part of an investment scheme as a whole, means that it *has a duty of care* as to how the Subject Property is managed and maintained, including . . . the duty to protect against known risks . . . ." (Italics added.)

As noted, an expert's opinion that a duty exists is a legal conclusion and cannot create a triable issue of fact as to the existence of a duty. (*Harding*, *supra*, 109 Cal.App.5th at p. 763.) Thus, even assuming, arguendo, that the trial court erred by excluding paragraph 18 of Oliver's declaration from evidence, the error was harmless. (See *Marin v. Department of Transportation* (2023) 88 Cal.App.5th 529, 536 [erroneous sustaining of objections was harmless because even considering the excluded evidence, no triable issue of material fact existed]; *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 857-858 [same]; *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449 [same].)

## C. The trial court properly granted Defendants summary judgment.

Duty is an element of each of Plaintiff's claims against Defendants. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158 ["The elements of a negligence claim and a premises liability claim are the same," and include "a legal duty of care"]; *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 876-877 [duty is an element of a claim for negligent hiring, retention, and supervision]; *Belen v. Ryan Seacrest Productions, LLC* (2021) 65 Cal.App.5th 1145, 1165 ["there is no independent tort of negligent infliction of emotional distress. [Citation.] 'The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element' "].) The parties address all four claims together. We do the same.

18

We will assume, arguendo, that SAM National and SAM PM were alter egos of SAM USC or otherwise had duties coextensive with SAM USC's duty as the Chapter House's owner and Mu Theta's landlord.  For the reasons explained below, however, we conclude that the scope of Defendants' duty to protect guests at the Chapter House from third-party sexual assault did not require Defendants to implement Plaintiff's proposed security measures at Mu Theta's party.  Thus, the trial court properly granted Defendants summary judgment.

1. **To determine the scope of a landlord's duty to protect tenants and guests from third-party crime, courts balance the foreseeability of such crime against the burdens of the plaintiff's proposed security measures.**

"A landlord generally owes a tenant the duty, arising out of their special relationship, to take reasonable measures to secure areas under the landlord's control against foreseeable criminal acts of third parties." (*Castaneda*, *supra*, 41 Cal.4th at p. 1213.) The duty extends to the landlord's other invitees.  (See *id.* at p. 1220, fn. 5; Rest.3d Torts, Phys. & Emot. Harm, § 40 (2012), com. m [describing "a trend toward recognizing an affirmative duty of reasonable care owed by landlords to their tenants and to their tenants' guests with respect to common areas under the landlord's control"].)  "In each case, however, the existence and scope of a property owner's duty to protect against third party crime is a question of law for the court to resolve." (*Castaneda*, at p. 1213.)

" 'First, the court must determine the specific measures the plaintiff asserts the defendant should have taken to prevent the harm.  This frames the issue for the court's determination by

19

defining the scope of the duty under consideration.' " (*Castaneda, supra,* 41 Cal.4th at p. 1214.) To determine whether those specific measures fall within the scope of the defendant's duty, the court applies a " 'sliding-scale balancing formula.' " (*Ibid.*) Pursuant to that formula, " ' " [i]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required.' " ' " (*Id.* at p. 1213.)

The sliding-scale balancing formula addresses two of the factors—burden and foreseeability—set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*) for limiting a duty of care.[6] (See *Castaneda, supra,* 41 Cal.4th at pp. 1213-1214.) "[O]ther *Rowland* factors may come into play in a given case, but the balance of burdens and foreseeability is generally primary to the analysis." (*Id.* at p. 1214.)

---

[6] The *Rowland* factors are "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland, supra,* 69 Cal.2d at p. 113.)

## 2. The trial court properly concluded that Defendants did not owe Plaintiff a duty to implement her proposed security measures at Mu Theta's party.

Before applying the foregoing principles, we reject Plaintiff's assertions that the trial court "did not address [her] special relationship argument" and "did not conduct a *Rowland* factors analysis." The trial court analyzed Defendants' alleged duty pursuant to the framework adopted in *Castaneda* for determining the scope of a landlord's special-relationship-based duty to protect tenants and other invitees from third-party crime. (*Castaneda*, *supra*, 41 Cal.4th at p. 1213.) That was the precise type of special-relationship-based duty alleged in Plaintiff's complaint. Moreover, the trial court analyzed the foreseeability and burden *Rowland* factors pursuant to *Castaneda*, in which the Supreme Court stated that the remaining *Rowland* factors may be immaterial in a given case. (*Id.* at pp. 1213-1214; see also *Hanouchian v. Steele* (2020) 51 Cal.App.5th 99, 113 (*Hanouchian*) [declining to address other *Rowland* factors because balance of burdens and foreseeability was dispositive].)

Plaintiff does not argue that the *Castaneda* framework is inapplicable to her claims or that another *Rowland* factor supports reversal of the judgment. We conclude that she forfeited any such argument. (*Lee*, *supra*, 41 Cal.App.5th at p. 721.) Accordingly, we will address the balance of burdens and foreseeability pursuant to the *Castaneda* framework.

We begin by determining the specific measures Plaintiff asserts Defendants should have taken to protect her from sexual assault at Mu Theta's party. (See *Castaneda*, *supra*, 41 Cal.4th at p. 1214.) Plaintiff does not challenge the trial court's

21

identification of the specific measures proposed by her complaint. Consistent with the trial court's analysis, we conclude that Plaintiff alleges Defendants had a duty to (1) hire and train security guards, in a manner "adequate" to prevent attendees from using illegal drugs and from entering the Chapter House's gym; and (2) implement a "system" to ensure that alcohol was not served to attendees below the legal drinking age (e.g., by hiring and training bartenders to check IDs before serving alcohol).[7]

Next, we apply the " 'sliding-scale balancing formula' " to determine whether the balance of burdens and foreseeability supports including Plaintiff's proposed security measures within the scope of Defendants' duty. (*Castaneda*, *supra*, 41 Cal.4th at p. 1214.) Plaintiff does not address the burden factor. She does not argue that the trial court erred in concluding that her proposed measures are sufficiently burdensome to require heightened foreseeability of third-party crime to support a duty. We conclude that she forfeited the argument. (*Lee*, *supra*, 41 Cal.App.5th at p. 721.)

---

[7] The trial court identified two proposed measures concerning security guards; we have consolidated them for simplicity's sake. As an additional proposed measure, the trial court identified the complaint's allegation that Defendants failed to implement a "safety system." However, the complaint did not specify—and Plaintiff did not clarify in the trial court or on appeal—what such a "safety system" might entail, or how Defendants could implement one. Because Plaintiff's proposal for a safety system is too vague for meaningful analysis, we conclude it is not the type of "specific" measure that courts must identify to define the scope of a landlord's duty to protect against third-party crime. (*Castaneda*, *supra*, 41 Cal.4th at p. 1214.)

In any event, we find no error. Our Supreme Court has long held that because hiring security guards carries significant monetary and social costs, "a *high* degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 679 (*Ann M.*), italics added, disapproved on another ground by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512; accord, *Castaneda*, *supra*, 41 Cal.4th at p. 1222; *Hanouchian*, *supra*, 51 Cal.App.5th at p. 109.) For the reasons explained below, we conclude that a high degree of foreseeability is likewise required to support a duty to implement Plaintiff's other proposed measure, i.e., hiring and training bartenders to check IDs, or otherwise implementing a system to prevent service of alcohol to underage attendees. (*Castaneda*, at p. 1222.)

We will assume, arguendo, that Defendants would not incur significant burdens in requiring Mu Theta or its live-in advisor to provide Defendants advance notice of all parties that Mu Theta intended to host at the Chapter House. However, Defendants would incur monetary costs in hiring bartenders for all such parties. To the extent Plaintiff alleges Defendants also had a duty to provide bartenders "adequate training" in refusing service to underage attendees (presumably supplementing the bartenders' existing training by addressing the specific context of a fraternity party not involving paying customers), providing such training would increase Defendants' costs. Moreover, it is questionable whether doing so would effectively protect attendees from sexual assault. Although people may be more vulnerable to assault when intoxicated, implementing Plaintiff's proposed measure could not eliminate intoxication among partygoers.

Bartenders could still serve alcohol to attendees of legal drinking age, and potentially to underage attendees who presented fake IDs that evaded detection. Underage attendees could also bring their own alcohol into the party, obtain alcohol at the party from other attendees, or—as Plaintiff alleges she did—arrive to the party already intoxicated.[8]

For these reasons, we conclude that Plaintiff's proposed measure concerning service of alcohol, like her proposed measure concerning security guards, falls within the scope of a landlord's duty to protect against third-party assault only if such assault is highly foreseeable. (See *Ann M.*, *supra*, 6 Cal.4th at pp. 678-679 ["the scope of a landlord's duty to provide protection from foreseeable third party crime . . . is determined by a balancing of 'foreseeability' of the criminal acts against the '*burdensomeness*, vagueness, and *efficacy'* of the proposed security measures" (italics added)]; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1196 [concluding owners of commercial parking garage did not have duty to implement plaintiff's proposed security measures to protect her from sexual assault, in part because "it is questionable whether plaintiff's proposed measures would have been effective"], disapproved on other grounds by *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, and *Reid v. Google, Inc.*, *supra*, 50 Cal.4th 512.) Accordingly, we assess whether

---

[8] In opposition to Defendants' motion for summary judgment, Plaintiff asserted that she "has not alleged that she sustained injuries which were proximately caused by being served alcohol [at the Chapter House]."

24

sexual assault at the Chapter House was highly foreseeable.[9]
(See *Castaneda, supra*, 41 Cal.4th at p. 1214.)

"To establish the heightened foreseeability necessary to impose a heavily burdensome duty such as hiring security guards, . . . the plaintiff must show the existence of prior similar incidents on the premises or other sufficiently serious 'indications

---

[9] Plaintiff argues that we must allow a jury to assess foreseeability. She relies on the Supreme Court's statement in *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112 that "[f]oreseeability of harm should ordinarily be determined by a jury." (*Id.* at p. 135.) However, as Defendants point out, the Supreme Court subsequently rejected Plaintiff's reading of *Isaacs*, explaining: "[B]road language used in *Isaacs* has tended to confuse duty analysis generally in that the opinion can be read to hold that foreseeability in the context of determining duty is normally a question of fact reserved for the jury. [Citation.] Any such reading of *Isaacs* is in error. Foreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court." (*Ann M.*, *supra*, 6 Cal.4th at p. 678.) Plaintiff nevertheless adheres to her misreading of *Isaacs* in her reply brief, without addressing *Ann M.*

*Ann M.* also found unpersuasive dicta in *Isaacs*, on which Plaintiff relies, regarding the relevance of prior similar incidents of violent crime in assessing foreseeability. (*Ann M.*, *supra*, 6 Cal.4th at p. 678 ["Upon further reflection and in light of the increase in violent crime, refinement of the rule enunciated in *Isaacs* . . . is required. We are not reluctant to revisit the rule announced in *Isaacs* because it was unnecessary for this court to consider the viability of the 'prior similar incidents' rule in order to decide the *Isaacs* case"]; see also *Ann M.*, at p. 679 ["the requisite degree of foreseeability [to find that hiring security guards falls within the scope of a landlord's duty] rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises"].)

of a reasonably foreseeable risk of violent criminal assaults.' " (*Castaneda*, *supra*, 41 Cal.4th at p. 1222; see also *id.* at p. 1221 [" 'our precedents have focused on whether there were prior similar incidents from which the property owner could have predicted the third party crime would likely occur, though we have recognized the possibility that 'other indications of a reasonably foreseeable risk of violent criminal assaults' could play the same role"]; *Ann M.*, *supra*, 6 Cal.4th at p. 679.)

Consistent with the foregoing principle, we agree with Plaintiff that heightened foreseeability does not require evidence that Defendants knew Hwang had a propensity to commit sexual assault. However, Defendants produced uncontradicted evidence that they had no prior knowledge of any sexual assault accusation against Hwang *or* any other member of Mu Theta. We conclude that Defendants' evidence shifted the burden to Plaintiff to "show the existence of prior similar incidents on the premises or other *sufficiently serious* 'indications of a reasonably foreseeable risk of violent criminal assaults.' " (*Castaneda*, *supra*, 41 Cal.4th at p. 1222, italics added.) We conclude that she failed to meet that burden.

The record contains no evidence of prior incidents of sexual assault or other violent crime at the Chapter House, or by Mu Theta members elsewhere. Plaintiff relies on evidence that SAM USC hired one of its investors, Blake Newman, as a live-in residential advisor at the Chapter House. However, the record contains no evidence that Newman observed or reported any violations of fraternity rules, much less rule violations or other

26

conduct of a nature that would seriously indicate a risk of sexual assault.[10]

Plaintiff also relies on the following evidence that Defendants knew of a *general* risk of sexual assault at fraternity parties: (1) SAM Inc. (the national fraternal organization) procured an insurance policy that applied to Defendants and insured them against risks of sexual assault; (2) SAM Inc. maintained a risk management policy that prohibited sexual assault, and warned local chapters and fraternity members that violations of the risk management policy could result in loss of membership in the fraternity; and (3) Huston (SAM Inc.'s executive director) testified that sexual assault is a known risk at fraternity parties. The trial court rejected Plaintiff's reliance on that evidence, explaining: "Plaintiff is attempting to impose a duty on Defendants to protect against third party criminal conduct through highly burdensome measures. In such cases, a duty will not be imposed merely because there was a 'known' risk."

---

[10] Mu Theta was on probation with USC and SAM Inc. when SAM USC purchased the Chapter House in July 2019, indicating that Mu Theta violated unspecified university and fraternity rules sometime before the 2019-2020 academic year. However, the only pertinent evidence in the record indicates that Mu Theta's probation concerned "hazing" allegations of an unspecified nature. Mu Theta's probation ended in December 2019 (the month before its party on January 25, 2020). Plaintiff does not argue that Mu Theta's probation rendered sexual assault at its party highly foreseeable.

As the trial court observed, *Hanouchian* rejected an argument similar to Plaintiff's.[11]  In *Hanouchian*, the plaintiff attended a sorority party hosted by the defendant sorority members at their off-campus residence, where two uninvited men suddenly punched the plaintiff and struck his face with a glass bottle.  (*Hanouchian, supra*, 51 Cal.App.5th at pp. 104-105.)  The defendant hosts were aware of past violent incidents at their university's fraternal events.  (*Id.* at p. 105.)  "[The university] and its fraternal organizations [had] jointly developed rules and guidelines governing fraternity and sorority events *to respond to past incidents of violent physical brawls, assaults, and sexual misconduct* at events that had open guest lists, unlimited alcohol, and no security.  Those rules require[d] sororities hosting an off-campus event to: . . . screen people entering the event, including attendees who are visibly intoxicated; limit the amount and type of alcohol provided; [and] provide adequate security arrangements, including spot-checks by university police . . . ."  (*Id.* at pp. 103-104, italics added.)  The hosts violated those safety protocols because, among other reasons, " 'there was no security present' " at their party and they " 'gave guests, including minors, unlimited access to alcohol . . . .' "  (*Id.* at p. 104.)

The plaintiff sued the hosts for negligence, alleging that they owed him a duty to protect him from assault at their party by complying with the aforementioned safety protocols.  (*Hanouchian, supra*, 51 Cal.App.5th at pp. 105, 109.)  The trial court sustained the hosts' demurrers to the complaint without leave to amend and entered judgment in their favor.  (*Id.* at p. 106.)  Division Three of this Appellate District affirmed, holding

[11] Plaintiff does not address *Hanouchian*, despite the trial court's and Defendants' reliance on it.

28

that the plaintiff had not alleged sufficient facts to "establish the high degree of foreseeability necessary to charge [the hosts] with a legal duty to take highly burdensome measures to prevent the type of sudden and unprovoked third party criminal attack that allegedly occurred" at their residence. (*Id.* at p. 113.) The court reasoned, in relevant part: "[The hosts'] alleged knowledge of prior incidents at other fraternity parties establishes only 'general knowledge of the *possibility* of violent criminal conduct' [citation]; it does not suffice to make it highly foreseeable that a criminal assault would occur at [the hosts'] party. [Citation.] This sort of 'constructive knowledge' or imputation of foreseeability by 'common sense' is not sufficient to impose, as a *legal duty*, the burdensome measures Plaintiff proposes." (*Ibid.*, original italics.)

Here, Plaintiff's evidence "establishes only 'general knowledge of the *possibility* of violent criminal conduct' " and is insufficient to make such conduct highly foreseeable. (*Hanouchian, supra*, 51 Cal.App.5th at p. 113.)

In short, because no evidence shows the heightened foreseeability of violent crime necessary to support a duty to implement the burdensome security measures that Plaintiff proposes, we conclude that Defendants did not owe Plaintiff a duty to implement those measures at Mu Theta's party. Because that alleged duty was essential to all of Plaintiff's claims against Defendants, the trial court properly granted Defendants summary judgment. We need not address the other *Rowland* factors. (See *Hanouchian, supra*, 51 Cal.App.5th at p. 113.) Nor need we address Plaintiff's arguments concerning alter ego liability and punitive damages.

## DISPOSITION

The judgments are affirmed.  Defendants are entitled to their costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

BENDIX, Acting P. J.

WEINGART, J.